# Home Telephone Co. *v.* Fields.

*Action for Damages for Death of Intestate.*

(Decided April 17, 1907.  43 So. Rep. 711.)

1. *Release; Joint Tort Feasors.*—A release of one of two joint
wrong doers by a writing reciting that the amount received is
not intended as a satisfaction of the whole amount claimed,
nor as a release of any claim against the other tort feasors,
under sections 1805, 1806, Code 1896, releases the other tort
feasor from liability pro tanto only.
2. *Electricity; Injuries from Use; Negligence; Proximate Cause.*—
The Home Telephone Company having abandoned a line left
wires in a tree on the public road.  One of such wires came in
contact with a live trolley wire and carried an electric current
to the tree and to a wire fence attached to a tree.  A traveler
on the highway touched the wire fence and was killed by an
electric shock.  Held, the negligence of the Telephone Com-
pany in leaving the wire on the tree was the proximate cause
of his death.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Henrietta Fields, administratrix of Robert
Isble, deceased, against the Home Telephone Company,
for the death of the deceased.  From a judgment for
plaintiff, defendant appeals.  Affirmed.

The negligence laid in the complaint,. is, the defend-
ant negligently caused or permitted one of its said wires
which ran along above the easterly side of Davis Avenue,
or its continuation, to be cut from the pole supporting
it, and allowed to hang from a tree or trees so that it
was a menace to the public safety, by reason of the dan-
ger of coming in contact with some wire charged with
electricity and transmitting said electrical charge to
some person or thing against which it might be blown,
or with which it might otherwise come in contact.  And
plaintiff avers that on the 11th day of August, 1905,
the said wire so negligently left hanging as aforesaid

[Home Telephone Co. v. Fields.]

did come in contact with some other wire heavily charged with electricity, and also came in contact with a wire fence running along Davis Avenue, or its continuation, and thereby charged said wire fence with electricity, fiom which it was communicated to said Robert Isble on said day by reason of which and as a proximate consequence of which said Robert Isble was charged with electricity and killed.

The pleas and the court's action theron sufficiently appear in the opinion of the court, as does the evidence.

The defendant was refused the following charges: Charges 1, 2 and 3, general affirmative charge with hypothesis. 10. If the jury believe from the evidence that the defendant was guilty of negligence as charged, and that by reason of such negligence Robert Isble came to his death, yet if the jury further believe that such result would not have happened had it not been for the negligence of the Mobile Light and Ry Company in having a defective bell so that the current from the trolley leaked into the span wire, and along from the span wire to a bolt along which the defective wire fell, and that this negligence (if the jury find from the evidence that the Mobile Light and Ry. Company were negligent) of the Mobile Light and Ry. Comapny intervened between the negligent leaving of the wire by the defendant in January and the killing of Robert Isble in August, then such intervening negligence of the Mobile Light and Ry. Company would be an independent cause of the death of Robert Isble, and the defendant would not be responsible therefor. The other charges relate to the release and their contents are sufficiently set out in the opinion.

There was judgment for plaintiff in the sum of $500.

PILLANS, HANAW & PILLANS, for appellant.—It is not enough that the injury complained of was a natural consequence of the negligence charged but it must appear that under all circumstances it might reasonably have been expected by a man of ordinary intelligence and prudence at the time of the negligent act or omission charged, that the injury which did result would result.

[Home Telephone Co. v. Fields.]

A failure to ward against that result which could not have been expected is not negligence.—*Wilson v. L. & N. R. R. Co.,* 40 South. 942; *M. & O. R. R. Co. v. Chirstian-Morlein Brewing Co.,* 41 South. 19; *W. Ry. of Ala. v. Mutch,* 97 Ala. 196; *E. T., V. & G. R. R. Co. Lockhard,* 79 Ala. 317; *Glasscy v. Street Ry. Co.,* 70 N. E. 199; *Cole v. German Sav. Soc.,* 124 Fed. 115; *T. & P. R. R. Co. v. Bingham,* 38 S. W. 162; *Ackerson v. Goodrich Transportation Co.,* 60 Wis. 141; *Milwaukee R. R. Co. v. Kellog,* 94 U. S. 475; *Nelson v. Electric Co.,* 67 L. R. A. 116; *Consolidated Electric Co. v. Koepp,* 68 Pac. 608; *Troy v. R. R. Co.,* 99 N. C. 298; *Morrison v. Davis,* 57 Am. Dec. 697. If there is an intervening cause between the act of negligence and the result sought to be charged against him alleged to be negligent, this breaks the chain of causation, unless the intervening cause should have been anticipated, or unless the intervening cause is put in motion by the negligence relied on.— *Scott v. Shepherd,* 2 W. Blackstone, 892; *A. G. S. R. R. Co. v. Chapman,* 80 Ala. 615; *Kincaid v. K. C. R. R. Co.,* 62 Mo. App. 365; *Ryan v. Miller,* 12 Daly, 77; *E. T. V. & G. Co. v. Lockhard, supra.* The release of one of two joint tort feasurs operated a discharge in law, and as it is clear that if defendant is liable it is jointly liable with M.L . & R. R. Co.—(*McKay v. Telephone C.o,* 111 Ala. 337). And as the M. L. & R. R. Co., was fully discharged by the release set up in the defendant's 3rd plea, the court should have given the charges requested by defendant.—*Cobb v. Malone,* 86 Ala. 571; *Seither v. Traction Co.,* 125 Pa. St. 397; *Ayer v. Ashmead,* 83 Am. Dec. 154; *Ellis v. Bitzer,* 15 Am. Dec. 534.

GREGORY L. & H. T. T. SMITH, for appellee.—The demurrer to the 3rd plea was propeprly sustained. The release set up was a release only pro tanto and did not release the tort feasor not mentioned therein.—Sections 1805-06, Code 1896; *Smith v. Cale,* 58 Ala. 600; *Snow v. Chandler,* 34 Am. Dec. 140; *Knapp v. Roach,* 94 N. Y. 329. The evidence failed to disclose that the railroad company was a joint tort feasor at all.—*Seaboard Mfg. Co. v. Woodson,* 94 Ala. 143; *M. & O. R. R. Co. v.*

*George,* 94 Ala. 216.  The negligence charged and sup-
ported by the evidence will support an action of this
character.—*South. Bell T. & T. Co. v. McTyer,* 137 Ala.
601; *Jones, et al. v. Finch,* 128 Ala. 217; *McKay, et al.
v. South. Bell Tel. Co.,* 111 Ala. 354; *Ahearn v. Oregon
Tel. Co.,* 33 Pac. 304; *Thompson v. L. & N. R. R. Co.,* 91
Ala. 501; *W. Ry. of Ala. v. Sistrunk,* 85 Ala. 357; *Sel-
ma S. & S. Ry. Co. v. Owen,* 132 Ala. 420.

HARALSON, J.—The plaintiff's evidence tended to
show, without dispute, that Robert. Isble, the son of
plaintiff, while walking along Davis avenue, in a su-
burb of Mobile, walked beneath an oak tree, on the edge
of a public road, and touched a wire fence that was
nailed to the tree, and was killed by an electric shock
therefrom.

The evidence of the plaintiff showed, that a trolley
pole of the Mobile Light & Railroad Company projected
into the branches of this tree; that through this trolley
pole ran an eye-bolt that supported the span wire that
held up the trolley wire which was heavily charged with
electricity; that on the outer edge of this bolt, and on
the outside of the trolley pole, was a nut, which had a
round and a square face, the round face being towards
the pole, and between the nut and pole was a washer;
that the defendant, the Home Telephone Company, had
formerly maintained a telephone system to Toulminville
by means of a number of wires which were suspended on
poles, and which ran along Davis avenue through the
branches of said oak tree; that this telephone system
had been abandoned some months before the accident,
and the wires and poles had, generally speaking, been
removed by defendant, but several of these wires had
been left dangling down through the branches of said
tree.  One witness testified that one of these wires was
left dangling from a pole to which the wires had been
attached, and others testified, that they were left hang-
ing in the branches of the tree but were detached from
the poles.  It was further shown for the plaintiff, that,
at the time of the accident, one of these wires extended
from the branches of the tree and was jammed between

[Home Telephone Co. v. Fields.]

the washer and nut already described, so tightly that the employee of the Mobile Light & Railroad Company, who removed the wire, could not jerk or swing it loose from the ground, and had to climb the pole with a ladder and knock it loose from behind. Several witnesses testified,—some of them, that they had seen wires hanging from this tree for some time before the accident, some of them, that they had noticed them for about a week before, and some, that they had noticed them as early as the preceding spring. One of them testified, that the trolley pole and the tree were about the same height, and that the bolt and nut were only a few feet below the top of the pole, and one of them, that the wire was lying across the top of the tree, and thence down across the nut and washer, and others still, that the wire extended from the branches of the tree down through the washer. One witness described the telephone wire as extending from the nut and bolt, so as to touch the wire fence, and one, that when he found it, just after the accident, the telephone wire was "kind of hooked to the fence as though somebody had bent the end of it to keep it from swinging," and when a trolley is properly suspended, the span wire is dead and not a live wire, and this span wire should be properly attached to the trolley by means of a bell which should be insulated, but, in this instance, the trolley wire ran through the bell to the span wire and out to the eye-bolt where the telephone wire was jammed and communicated in this manner to the wire fence.

It was admitted that the defendant company was, at the time of the accident, doing business in and around Mobile as a telephone company and serving the public in the maintenance of a telephone system.

The defendant introduced evidence tending to show, that before the accident they pulled down all their wires through this tree and none were left.

The first plea of the defendant was the general issue. The second, that the Mobile Light & Railroad Company was a joint tort-feasor with the defendant, and that plaintiff had entered into a settlement and composition with said railroad company, by which the plaintiff had

made and executed a full release of any and all claims for damages.

The fourth plea set up this receipt in hæc verba, which appears to be in partial discharge of liability, which the plaintiff contends was a payment and discharge of defendant's liability pro tanto.

The only ruling upon the pleading was that sustaining the demurrer to the third plea, which set up an absolute bar to the plaintiff's entire action, the fact that she had executed the receipt which is set out in full in said plea.

The court accorded to the defendant, in mitigation of damages, and as a payment pro tanto in discharge of its liability, the amount named in said receipt as was set up in the defendant's fourth plea. The third plea set up said release as an absolute bar to the entire action.

The plaintiff admitted she had executed said release, which was in words and figures as follows:

"Received August 28, 1905, of the Mobile Light & Railroad Company one hundred dollars, in part payment of such amount as I, as the administratrix of the estate of Robert Isble, deceased, may be entitled to recover for or on account of his death, which I claim to have occurred on the 11th day of August, 1905, by reason of the joint negligence of the said Mobile Light & Railroad Company and of the Home Telephone Company.

"The Mobile Light & Railroad Company denies that it was guilty of any actionable negligence resulting in the death of the said Robert Isble, but makes said payment in full compromise and settlement of any claim that I, as such administratrix may have or claim to have against it on account of said death, and I, as such administratrix hereby release and discharge said company from all further claims on account of said death. It is however, expressly understood and agreed that this payment is made only on account of any sum that I may be entitled to recover for the death of said Robert Isble, and in consideration of my release of the said Mobile Light & Railroad Company from any liability

for damages on account of said death, but it is not intended as a satisfaction of the entire amount that I may be entitled to for said death nor as a release of any claim that I may have against the Home Telephone Company, or against any other person or corporation other than the Mobile Light & Railroad Company on account of the death of said Robert Isble.

"(Signed) Henrietta Fields."

As to whether this release was a discharge in full to each of the joint tort-feasors, as contended by defendant, it will be well to notice the recitals of the release. They are: "It is however expressly understood and agreed that this payment is made only on account of any sum that I may be entitled to recover for the death of the said Robert Isble, and, in consideration of my release of the Mobile Light & Railroad Company from any liability for damages on account of said death, but it is not intended as a satisfaction of the entire amount that I may be entitled to for his said death, nor as a release of any claim that I may have against the Home Telephone Company, or against any other person or corporation other than the Mobile Light & Railroad whether a release of this character by which one of the joint tort-feasors pays a certain sum of money in partial satisfaction and with the express understanding and agreement that it shall not release the other joint tort-feasor, must nevertheless be held to have this effect.

Sections 1805 and 1806 of the Code of 1896, provide, that "all receipts, releases and discharges in writing, whether of a debt of record, or a contract under seal, or otherwise, must have effect according to the intention of the parties thereto" (citing a number of our cases); and "all settlements in writing, made in good faith for the composition of debts, must be taken as evidence, and held to operate according to the intention of the parties, though no release under seal is given, and no new consideration has passed."

In 24 A. & E. E. Law (2d Ed.) 307, the rule is stated: "But it is a well-settled rule, that when a release of one wrongdoer is not a technical release under seal, then the intention of the parties is to govern, and it becomes a

question of fact for the court and jury whether, or not, what the releasor has received was received in full satisfaction of his wrong, and if it appears that it was not so received, it is only pro tanto to bar the action against the other wrongdoers," citing the case from this court of *Smith v. Gayle,* 59 Ala. 600, where it is said: "If the purpose is to discharge a debt due by record, or by a specialty, and that purpose is expressed in writing, it is not now material whether the writing is under seal or not; nor is it material though a smaller sum is accepted, than is really due. If the purpose is to release a part only of a demand, and not the whole, or only one of several jointly liable, it is a release only pro tanto. No other or greater effect can be given it, than the parties intended. A release to one of several joint contractors, though the creditor should retain the right to proceed against the others, would release them, to the extent that they could demand contribution from their associate who is released. It would have no other operation. * * * If any larger operation was given it, the intention of the parties would be defeated."—*Cowan v. Sapp,* 74 Ala. 50; *Snow v. Chandler,* 10 N. H. 92, 34 Am. Dec. 140.

The contention of learned counsel for defendant, that the grounding of the foregoing decision in this opinion upon the statute was unnecessary, and was, in that respect, dictum, and has no application to this case, or if it be regarded as applicable, then the decision is wrong in principle, so far as it depends on the statute for its vitality, cannot be admitted. It is too well settled to the contrary.

That the negligence of the telephone company in permitting its wires to swing down constitutes such negligence as will support an action of this character, seems too clear for dispute.—*S. B. T. & T. Co. v. McTyer,* 137 Ala. 601, 613, 34 South. 1020, 97 Am. St. Rep. 62; *Jones v. Finch,* 128 Ala. 217, 29 South. 182.

In the first case cited it was said:

"The presence of a dangerous thing is not justified by any consideration of public good or convenience. * * * So when they (the wires) were originally carried into

the building and equipped and maintained to supply the service to the owner, but at his instance the service has been discontinued and the instrument removed, and the company instead of then removing the wires, merely cuts them loose from the instrument, twists their ends together and leaves them thus dangling in the building, so that atmospheric electricity, striking them anywhere along their course on the outside, will be inducted into the building and there discharged to the peril of persons and property, this is an unpalliated wrong on the part of the company: It is the creation and maitenance of a dangerous situation without the warranting occasion for it which may exist when the lines are in use—without any occasion whatever in fact; and the company is liable in damages for whatever injuries may result to persons and property rightfully on the premises."

As to the suggestion that a stranger may have intervened and bent the dangerous wire to the fence, and that this act was the proximate cause of the injury, it may be said that there is no proof of the intervention of a stranger in this matter. One witness testified, that the wire came down, "so as to touch the wire fence," and another, that the telephone wire was "kind of hooked to the fence as if some one had bent it to keep it from swinging." How this happened and by whom, it does not appear. It may have done, if at all, from aught appearing, by one of defendant's employees. If the wire was loose and dangling in the streets, without being fastened to anything, would it not have been quite as dangerous, if not more so, than if it had been tied to the fence? In either case, it would have been dangerous, and liable to charge the fence with electricity; and whether the fence was charged with electricity from the act of the defendant, or from its act and that of the railroad company jointly or concurrently, either act would be counted as the proximate cause of the injury, if one resulted to a passer-by. As observed in the case of *Thompson v. L. & N. R. R. Co.*, 91 Ala. 501, 8 South. 406, 11 L. R. A. 146: "If the original wrong becomes injurious only in consequence of some distinct wrongful

act or omission by another, the injury shall be imputed to the last wrong. But, if the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person, and does actually result in injury, through the intervention of causes which are not wrongful, the injury shall be referred to the wrongful cause." "If damage has resulted directly from concurrent, wrongful acts of two persons, each of them may be counted on as the proximate cause, and the parties held responsible jointly or severally for the cause."—Cooley on Torts, pp. 68, 69, 70, 78.

"If the defendant's wrongful act is one of two or more concurrent efficient causes other than plaintiff's fault, which co-operate directly to produce the result, this, under the authorities, is all that is requisite for fastening liability on him."—*W. R. of Ala. v. Sistrunk*, 85 Ala. 357, 5 South. 79.

It cannot be denied that it is the duty of a telephone company to look after its own wires, and to see that they are not left in a dangerous position, and a failure to do this is a proximate cause of injury which results from a loose wire falling in the street.—*Ahern v. O. T. & T. Co.*, 33 Pac. 403, 35 Pac. 549, 24 Or. 276, L. R. A. 63g.

In *S. S. & S. R. Co. v. Owen*, 132 Ala. 420, 31 South. 598, it was held that when negligence of a carrier creates an apparent necessity for a passenger to leap from a moving car, and the leap produces injury, the negligence is the proximate cause of the injury.

It is not denied that the railroad company was a tortfeasor in this case, and under the evidence, it is apparent, that the defendant company was also guilty of a wrongful act. It is manifest that the leaving of a wire of the company to dangle from the tree was a piece of gross negligence, which must be regarded as the proximate cause of the injury.

We have thus held that the receipt given by plaintiff to the railroad company, releases the company from liability only pro tanto; that the negligence of defendant in leaving a loose wire dangling from a tree, so as to

come in contact with a highly charged trolley wire, must be treated as the proximate cause of injury to plaintiff's intestate. These are the only questions presented for review.

The appellant did not in brief treat the charges in detail, which were requested by it and refused, nor did the appellee. Both apparently regarded them as involved in the principles discussed, and which we have decided adversely to the appellant. They were properly refused.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.