(75 South. 979)

DWIGHT MFG. CO. v. WORD. (7 Div. 833.)

(Supreme Court of Alabama. May 10, 1917.)

1. ELECTRICITY ⊚⟳16(2) — DUTY OF ELECTRIC COMPANY—INSULATION OF WIRES.

It is the duty of an electric company conveying a current of high potential to use reasonable care to keep the same properly insulated wherever it may be reasonably anticipated that persons, pursuing business or pleasure, may come in contact therewith.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

2. ELECTRICITY ⊚⟳16(2)—DUTY OF ELECTRIC COMPANY—INSULATION OF WIRES.

The fact that it may be expensive to place proper insulation upon electric wires is no excuse for failure to do so.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

3. ELECTRICITY ⊚⟳16(5) — DUTY OF ELECTRIC COMPANY—INSULATION OF WIRES.

Depending on the nearness of a tree with respect to human beings, an electric company maintaining a dangerous wire through or near it is bound to anticipate that persons may lawfully climb the tree.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

4. ELECTRICITY ⊚⟳16(5) — DUTY OF ELECTRIC COMPANY—INSULATION OF WIRES.

An electric company maintaining a dangerous wire through a tree is charged with knowledge that the swaying of limbs is likely to abrade the insulation, requiring frequent inspection.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

5. EVIDENCE ⊚⟳9—JUDICIAL NOTICE—INSULATION OF ELECTRIC WIRES.

Courts judicially know that even wires carrying very high voltage may be so insulated as to at least materially lessen the danger of shock to those who come in contact therewith.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 8.]

6. EVIDENCE ⊚⟳513(1) — MATTERS OF EXPERT OPINION—INSULATION OF ELECTRIC WIRES.

The particular physical conditions, if any, under which insulation may become entirely useless, are matters for expert opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318.]

7. ELECTRICITY ⊚⟳16(4)—DUTY OF ELECTRIC COMPANY—REMOVAL OF WIRES.

If the telephone company had erected its wires in dangerous proximity to electric company's wires, the latter was under no duty to remove its wires to a safe distance.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

8. ELECTRICITY ⊚⟳16(4) — DUTY OF ELECTRIC COMPANY—CARE OF WIRES.

If electric company acquiesced in the dangerous proximity of the telephone wires to its own, it would be under duty to keep its wires in such condition as to insure safety to those exposed to immediate contact therewith.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

9. ELECTRICITY ⊚⟳16(4) — INJURY TO THIRD PERSONS—COMPANY'S LIABILITY.

With respect to third persons who may be injured by contact of telephone wires with electric wires, it is the duty of both companies to remedy the dangerous condition, no matter which one primarily caused it.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

10. ELECTRICITY ⊚⟳19(2)—INJURY TO TELEPHONE LINEMEN—DUTY OF ELECTRIC COMPANY.

In an action by a telephone lineman for injuries from contact with defendant electric company's wires, the count based upon the dangerous proximity of the electric wires to those of the telephone company was deficient and subject to demurrer in the absence of an averment that defendant "placed" and maintained its wire in the dangerous proximity complained of.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

11. ELECTRICITY ⊚⟳16(1) — INJURY TO TELEPHONE LINEMEN—DUTY OF ELECTRIC COMPANY.

Charging a wire, even with knowledge that the telephone company's employés might come in contact with it as shown, is not a breach of duty, unless the wire is improperly located or in an improper condition as to insulation.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

12. ELECTRICITY ⊚⟳16(4) — INJURY TO TELEPHONE LINEMAN—DUTY OF ELECTRIC COMPANY.

In action by telephone lineman for injuries from contact with defendant electric company's wire, if defendant negligently permitted its wires to sag down on those of the telephone company it was liable.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9.]

13. ELECTRICITY ⊚⟳19(2)—INJURY TO TELEPHONE LINEMAN—DUTY OF ELECTRIC COMPANY.

In action by telephone lineman for injuries from contact with defendant electric company's wire, defendant's plea of contributory negligence, reciting that the wires of the telephone company were strung about two feet below the wire of defendant, and plaintiff negligently came in contact with defendant's wire or wires by climbing a tree and going above the wires of the telephone company for a distance of about two feet, and negligently came in contact with the wires

of defendant, which were in open view to plaintiff, and were known by him to be strung along said tree at the time, was sufficient under the facts shown by the complaint.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.]

14. ELECTRICITY ⬥18(1) — INJURY TO TELEPHONE LINEMAN — CONTRIBUTORY NEGLIGENCE.

In action by a telephone lineman for injuries from contact with defendant electric company's wires, plaintiff was negligent although he did not know that he could come in contact with the wire, and that it would injure him, where he failed to exercise ordinary care to discover and avoid the danger.

[Ed. Note.—For other cases, see Electricity. Cent. Dig. § 10.]

15. TRIAL ⬥213—INSTRUCTIONS—LEGAL EFFECT OF PLEADINGS.

A party is entitled to have the jury instructed as to the legal effect of the pleadings in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 480.]

16. ELECTRICITY ⬥15(1)—INJURIES TO TELEPHONE LINEMAN—LICENSEE OR TRESPASSER.

In action by telephone lineman for injuries from contact with defendant electric company's wires, where the only theories upon which defendant's negligence could be grounded were (1) negligence in placing wires or in allowing them to sag, and (2) maintaining them without proper insulation, the doctrine relating to trespassers and licensees had no application.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 8.]

17. ELECTRICITY ⬥19(2)—INJURIES—PLEADING—"AMONG."

In an action by a telephone lineman for injuries from contact with defendant electric company's wires, a count charging that defendant negligently allowed its wire to sag down among the wires of the telephone company was not supported by proof that defendant's wires sagged down to twelve or more inches above the telephone wires, "among" meaning in the midst of or mingled with.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11.

For other definitions, see Words and Phrases, First and Second Series, Among.]

18. RELEASE ⬥58(1)—JOINT WRONGDOERS—QUESTION FOR JURY.

In an action by telephone company's employé against defendant electric company for injuries from contact with an electric wire, whether a release signed by employé released electric company was a question for the jury.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 109.]

19. EVIDENCE ⬥461(1)—PAROL EVIDENCE TO VARY RELEASE.

In an action by telephone company's employé against defendant electric company for injury from contact with its wires, there was no error in admitting testimony of an attesting witness that when the release to the telephone company was signed there was no understanding that it released the electric company.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2129.]

Appeal from City Court of Gadsden; John H. Disque, Judge.

Action by James Word against the Dwight Manufacturing Company for personal injuries caused by electricity. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

The case was submitted to the jury on counts 4, 5, 6, and 7, and the averment of fact common to all of them is as follows:

Count 4. The plaintiff claims of defendant corporation the further sum of $5,000 as damages for that on, to wit, the 11th day of June, 1914, plaintiff was in the employ of the Southern Bell Telephone & Telegraph Company as a lineman; that the Southern Bell Telephone & Telegraph Company was then engaged in operating a telephone system in Gadsden, Ala., and contiguous territory thereto, and a part of its plant consisted in wires strung along Tuscaloosa street, in said city of Gadsden, Ala.; said telephone wires were stretched from one pole to another pole, and attached to cross-arms on insulators arranged for that purpose, and said cross-arms were attached to said telephone posts in the usual manner of constructing such wires; the posts of said telephone company were set along the northern margin of said Tuscaloosa street. Plaintiff further avers that defendant maintained and operated a wire heavily charged with a dangerous current of electricity, which was very likely to cause death or serious bodily harm if it should come in contact with the human body; defendant's said wire or wires so charged were also strung from one pole to another, and attached to cross-arms on its posts, which posts were also along the northern margin of Tuscaloosa street, in Gadsden, Ala. Plaintiff further avers that the posts of said telephone company and the posts of defendant were maintained and operated in such close proximity to each other, and in some places along said street substantially in the same line with each other, that linemen of said telephone company, in the proper discharge of the duties of their employment, were very likely to come in contact with the heavily charged electric wire of defendant; and plaintiff avers that these wires of the telephone company had been maintained and operated in the manner above averred for more than three years at the time this plaintiff was injured as hereinafter set out. Plaintiff further avers that his duties as lineman of said telephone company required him to repair, adjust, clear, and keep in working order the telephone lines, and to do this it was very often necessary for him to get among the wires of the telephone company where they were strung from one pole to another; that on said date, to wit, the 11th day of June, 1914, plaintiff's duties as lineman of said telephone company required that he get up among the telephone wires strung along said Tuscaloosa street for the purpose of remedying some condition of said wires, and that while he was thus in the proper discharge of the duties of his employment as lineman of said telephone company, and while he was at a place he had a right to be, he came in contact with the wire of the defendant, which defendant maintained and operated as aforesaid in close proximity to the said telephone wires, and which said defendant's wire or wires were charged with dangerous current of electricity, and as a proximate consequence plaintiff was severely shocked, caused to fall and be bruised, was burned on the left side of his body, caused to suffer much physical and mental pain, caused to be confined to the hospital for some time, lose much time from earning wages, put to great expense in having his injuries treated, and is permanently injured and rendered less able to earn a living, hence this suit. The count then avers that plaintiff's injuries were the proximate result of defendant's said negligence in operating and maintaining said wire charged with the dangerous current of electricity in such close proximity

to the said telephone wires that employés of said telephone company, in the proper discharge of their duties, were likely to come in contact therewith. Count 5 imputes the injuries to defendant's negligence in negligently causing said wire to be charged with a current of electricity which was dangerous to human life, at said time and place, when it knew that the employés of said telephone company were likely to come in contact therewith. The negligence imputed in count 6 is that defendant negligently failed to keep said wire, which was charged with the dangerous current of electricity, properly insulated, so as to disarm it of danger to persons coming in contact therewith, as did plaintiff as aforesaid. Plaintiff's injuries in count 7 are imputed to defendant's conduct in negligently allowing or permitting its said wire, which was charged with the dangerous current of electricity, to sag down among the wire of the telephone company to where it was likely to come in contact or become in contact with by the employés of said telephone company, while rightfully in the discharge of their duties as linemen, as plaintiff was at the time of his injuries.

Numerous grounds of demurrer were filed to these counts and overruled. Defendant filed a number of special pleas to each count separately, as follows:

(9) Contributory negligence proximately contributing to his injury, which negligence consisted in this: The wires of said telephone company were strung about two feet below the wire of defendant, and plaintiff negligently came in contact with defendant's wire or wires by climbing a tree in the margin of said Tuscaloosa street or road, and going above the wires of the telephone company for a distance of some two feet or more, and negligently came in contact with the wire or wires of defendant, which were in open view to plaintiff, and were known by plaintiff to be strung along said street at the time and place of plaintiff's injury above the wires of the telephone company, and were known by plaintiff to be high voltage electric wires, likely to inflict serious bodily injury on him in case he came in contact therewith.

(15) Further answering count 4 of the complaint, defendant says plaintiff was himself guilty of negligence which proximately contributed to his injury, which negligence consisted in this: That plaintiff, with knowledge that defendant's wires were strung along said street about two feet above the wires of the telephone company at the time and place of his injury, and with knowledge that they were high voltage electric wires, likely to inflict on him serious bodily injury in case he came in contact therewith, climbed a tree in the northern margin of said street, and went up above the wires of the telephone company, and assumed a position in dangerous proximity to defendant's wire or wires, with knowledge of the danger of contact therewith and probable injury therefrom, when it was unnecessary for him to do so in order to get among the wires of the telephone company or to properly discharge the duties of his employment with the telephone company, and when he could have assumed a safe position in said tree out of or beyond danger of contact with defendant's wire or wires, and plaintiff knew of such safe position, but nevertheless he negligently failed to assume such safe position, and as a proximate consequence thereof he came in contact with defendant's said wire or wires and was injured.

Plea 18, as amended, is: For further answer to the entire complaint, and each count thereof, defendant says that the Southern Bell Telephone & Telegraph Company, plaintiff's employer at the time of his injury, and defendant are jointly liable to plaintiff for the injury sustained by him, if defendant is liable at all; that the two companies named are jointly responsible for the conditions complained of in the complaint; that plaintiff's cause of action was satisfied and extinguished long before the bringing of this suit by the receipt by plaintiff from said telephone company of full compensation for his injury or compensation, accepted by plaintiff as full compensation, and plaintiff executed a release to said telephone company, and said release extinguished his entire cause of action and claim for damages arising from or growing out of his said injury. Said release is in words and figures as follows:

"Election of Employee, under Plan for Employees' Pensions, Disability Benefits and Death Benefits.

"In consideration of the compensation payable to me by the Southern Bell Telephone & Telegraph Company, under its plan for Employees' Pensions, Disability Benefits and Death Benefits, I elect, in accordance with the provisions contained in paragraph 26 of § 9 of the Plan, to accept the benefits to which I am entitled under the 'Plan' in lieu of and in release of any claims and demands which I might otherwise have against said company on account of injuries sustained by me at Gadsden, in the state of Alabama, on June 11, 1914.

"[Signed] J. W. Word.

"Signed in my presence this the 1st day of August, 1914, by J. W. Word, after above was read aloud to him.

"[Sd.] Jack Abbot.

"[Sd.] J. C. Wilcox."

Defendant avers that plaintiff, James W. Word, received under his said election and the release above set forth the sum of, to wit, $363.49, and the retention of his job or employment with said telephone company during the period of his life.

Demurrers were sustained to all these special pleas except 15 and 18, and the trial was had upon these special pleas and the general issue. It was a disputed question whether the telephone company's wires or the defendant's wires were first erected along Tuscaloosa avenue at the place of accident to plaintiff. It was a disputed question also as to how much, if any, defendant's wires were sagging down where they passed through the tree above the telephone wires; plaintiff's testimony tending to show that they were sagging to within a little more than 12 inches of them, while other witnesses stated that there was no more than the normal and necessary sag, and that defendant's wires were 22 inches above the telephone wires. Plaintiff is an expert lineman, having had about 10 years experience in working for electric light and telephone companies in that capacity. He ascended the tree where the accident occurred for the purpose of wrapping a telephone wire with tape to prevent its contact with a limb. In doing this he pushed his shoulder against defendant's wire, and was severely burned and knocked from the tree. The tree was from 10 to 15 feet from the power and telephone pole, from which the wires of both companies ran into and through the branches of the tree, about 15 feet above ground. Plaintiff had known for five years of the presence of the power wires on the street, had seen the poles, and knew the wires carried a high voltage. He testified that he did not know that they were in the tree or so close to the telephone wires,

and that he went about his work in the tree without looking for or thinking about the power wires, which he never saw at all at the time of his injury. The evidence tended to show that at or about the place of plaintiff's contract with the power wire, after the injury, the wire was bare of insulation for two or three inches; and this could be caused either by its contact with the limb, or with a man's shoulder if another part of his body was on the telephone wire, or if it were grounded. The evidence is without dispute, from expert witnesses, that in such a case the insulation of a power wire of this voltage (about 2,200) would be no protection to a human being, although one expert stated that when fresh the insulation would be a protection "to a certain extent." Several of the witnesses stated that the insulation would be of no service at all. Defendant's wires were properly insulated when put up three or four years previously, and the evidence tended to show that the insulation lasts from six to eight years. The court gave the following charges at plaintiff's request:

(A) The court charges the jury that before plaintiff can be guilty of contributory negligence you must be reasonably convinced from the evidence that he knew he could come in contact with the wire that injured him by his act and knew it would injure him.

(B) The court charges the jury that defendant had a right to perform his duties in a way most convenient to him, and in doing so would be guilty of no negligence unless he knew that to do so would injure him.

The following among other charges were refused to defendant:

(11) The court charges the jury that if they find from the evidence in the case that the Dwight Manufacturing Company constructed its line first along Tuscaloosa street at the place where plaintiff was injured, and the telephone company afterwards built its line along the same margin of said street at said place, placing its wires in close proximity to the wires of defendant, then plaintiff is a bare licensee or trespasser, and he cannot recover in this case unless defendant wantonly, willfully, or intentionally injured him.

(18) Defendant's plea of the general issue, which it has filed in this case, is a denial of any negligence on its part as charged in the complaint, and the fact that defendant has also pleaded contributory negligence on the part of plaintiff is not an admission by defendant that it was guilty of negligence in the case to any extent whatever. Defendant also requested the general affirmative charge as to each count separately, each of which was separately refused.

Dortch, Martin & Allen, of Gadsden, for appellant. Forman & Davis, of Gadsden, for appellee.

SOMERVILLE, J. We approve as sound the following rules of law, which are well settled by the most authoritative decisions in this country:

[1] 1. "The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them." Curtis on Law of Electricity, § 510.

2. "Insufficient or worn insulation is worse than none, for sometimes it gives an appearance of security when, in fact, it is as dangerous as a bare wire." Id.

[2] 3. "The fact that it may be expensive to place a proper insulation upon electric wires is no excuse for a failure to do so." Id.

4. The obligation of the electric company to insulate is not absolute, but alternative, in its nature. "Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless." Id. § 511.

[3] 5. "An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is bound to exercise due care to prevent injuries to such persons from its wires." Id. § 512.

[4] 6. "The maintenance of a wire through a tree requires frequent inspection, for the company is charged with knowledge that the swaying of the limbs is likely to abrade the insulation and permit the dangerous current to escape." Id.

(These last two propositions are, of course, to be qualified by the nearness or remoteness of the tree with respect to human beings, and their natural and probable associations therewith.)

[5] 7. From the foregoing it is clear that courts judicially know that even wires carrying very high voltage may be so insulated as to at least materially lessen the danger of shock to those who come in contact therewith.

[6] But the extent of such protection, and the particular physical conditions, if any, under which insulation may become entirely useless, are matters for expert opinion.

The merit of the fourth count of the complaint is rested upon the assumption that defendant is guilty of a breach of duty to employés of the telephone company in maintaining and operating a wire, carrying a dangerous current of electricity, in such proximity to the telephone wires that their employés are likely to come in contact therewith while in the proper discharge of their duties. But it is clear that the maintenance and operation of such a wire by defendant is wrongful only when the dangerous proximity complained of is caused by defendant.

[7] If the telephone company has erected its wires in dangerous proximity to defendant's wires previously erected, defendant is manifestly under no duty to remove its wires to a safe distance.

[8] It is no doubt true, in such a case, that, if defendant acquiesced in the dangerous

proximity of the telephone wires to its own, it would be under the duty to keep its wires in such a condition as to insure the safety of those exposed to immediate contact therewith, so far as due care may do so. Curtis on Law of Elec. § 519, citing Staab v. Tel. Co., 23 Idaho, 314, 129 Pac. 1078; Wilkins v. Water, etc., Co., 92 Neb. 513, 138 N. W. 754; Hipple v. Edison, etc., Co., 240 Pa. 91, 87 Atl. 297.

[9] And, with respect to third persons who may be injured at other places by the contact of the two wires, it is the duty of both companies to remedy the dangerous condition, no matter which one primarily caused it. Macon v. Paducah St. Ry. Co., 110 Ky. 682, 62 S. W. 496; 7 Am. Elec. Cas. 630; Herbert v. Charles Lake, etc., Co., 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505; Curtis on Law of Elec. § 480.

[10] But this count is not based upon any defective condition of defendant's wire, nor upon its contact with the telephone wire, but solely upon its dangerous proximity thereto. We think the count is deficient and subject to the demurrer, in the absence of an averment that defendant *placed*, as well as maintained, its wire in the dangerous proximity complained of.

So, we think that the fifth count is also defective and subject to the demurrer, in that it shows no facts which would render the act complained of, viz. "causing said wire to be charged with a current of electricity which was dangerous to human life at said point," a breach of duty to the employés of the telephone company. The only duty with respect to the use of such wires—which is a necessity in modern industrial and municipal life—is to place them where they are normally inaccessible to the unwary, and to guard them by the best insulation, or other practicable protective devices, from dangerous contact with those who may nevertheless be expected to be exposed thereto. In Consolidated, etc., Co. v. People's, etc., Co., 94 Ala. 372–375, 10 South. 440, it was stated, as a proposition falling within the purview of common knowledge, that "contact with electrical conductors, sufficiently charged to subserve the purposes of city illumination, destroys animal life."

[11] Thus charging a wire, even with knowledge that the telephone company's employés might come in contact with it as shown, is not a breach of duty, unless the wire is improperly located, or in an improper condition as to insulation.

[12] The sixth and seventh counts are sufficient as against defendant's demurrers. Under the authorities above cited, plaintiff's exposure to contact with defendant's wire in the tree, though speculative, was fairly within the range of natural and probable events suggested by the circumstances, of which defendant was bound to take notice.

[13] Plea 9 includes in its averments every element necessary to a plea of contributory negligence under the facts shown by the complaint, and is not subject to any vice pointed out by the grounds of demurrer. As this plea, in connection with plea 15, will afford defendant full scope for the defense of contributory negligence, we do not notice the rulings on other pleas of like character.

[14] Charges A and B, given at the instance of defendant, are palpably erroneous. Contributory negligence is not predicated solely on knowledge of the danger, and the certainty of injury to follow. If such were the rule, contributory negligence would be but a synonym for willful suicide or self-injury. If plaintiff had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct in the premises, then he was guilty of negligence if he failed to exercise ordinary care to discover and avoid the danger and the injury. 29 Cyc. 513, c; Id. 515, d; Sloss S. S. & I. Co. v. Reid, 191 Ala. 628, 68 South. 136. See, also, Curtis on Law of Elec. §§ 531, 537.

Under the testimony in this case, the instructions in question were, in effect, general affirmative charges for the plaintiff on the issue of contributory negligence, and their giving was prejudicial error.

[15] A party is entitled to have the jury instructed as to the legal effect of the pleadings in the case, and we think that charge 18 should have been given as requested by defendant. McDonald v. St. Ry. Co., 110 Ala. 161, 20 South. 317. In view of the general explanations given in the oral charge to the jury, its refusal in this instance might not be reversible error.

[16] If defendant was guilty of negligence either in placing its wires, or in allowing them to sag, in dangerous proximity to the telephone wires, or in maintaining them there without proper insulation—and these are manifestly the only theories upon which defendant's negligence can be grounded—then the doctrines relating to trespassers and licensees (as presented in defendant's refused charge 11 and others) can have no application to this case.

[17] The seventh count charges that defendant negligently allowed its dangerous wire "to sag down among the wire of the telephone company." "Among" means in the midst of, or mingled with; and this allegation is not supported by proof that defendant's wire sagged down to 12 or more inches above the telephone wire. The allegation is descriptive of the negligent act charged, and goes to its substance. It is therefore not a case of variance merely, but a failure to prove the substance of the complaint, which was fatal to the right to recover under this count. We think the general affirmative charge should have been given for defendant on this count as requested.

As the case must be tried again, and the

evidence may be different, we do not undertake to pass judgment on the refusal of the trial judge to instruct for defendant on the issue of contributory negligence.

[18] Under plea 18 the issue was whether plaintiff accepted the pecuniary benefit from his employer, the telephone company, as a full satisfaction for the injury suffered, or merely in release of the telephone company and as a satisfaction pro tanto. Conceding, for the argument, that defendant and the telephone company were both tort-feasors with respect to the dangerous proximity of their respective wires, and equally liable to plaintiff, the intention of plaintiff, as deduced from the language of the release, and the character and circumstances of the settlement which it evidenced, was a question for the jury. Home Tel. Co. v. Fields, 150 Ala. 306, 312, 43 South. 711, citing 24 A. & E. Enc. Law (2d Ed.) 307; Smith v. Gayle, 58 Ala. 600.

[19] There was no error in admitting the testimony of an attesting witness that, when the release was executed, there was no statement or understanding that it released the defendant company also. So, also, defendant's request for the general affirmative charge on this issue was properly refused.

For the errors pointed out the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.