[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 69 
Appeal by Braswell Wood Company, Inc. (Braswell Wood) from a summary judgment entered against it in the amount of $15,000, together with interest and costs, in favor of plaintiff, Paul B. Fussell, Sr. We reverse and remand.
The action grows out of a mortgage and promissory note on 240 acres of land lying in Macon and Bullock Counties. The land was owned by Ronald K. and Sandra K. Pirnie, who had purchased it from Fussell, giving him a purchase money mortgage and note in exchange. Fussell, as mortgagee, filed a complaint seeking to foreclose, and also seeking damages from Braswell Wood for alleged conversion of timber on the mortgaged land.[1]
The mortgage was foreclosed, and a deficiency judgment was awarded to Fussell. The propriety of those proceedings is not in issue here.
Fussell, the mortgagee, moved for summary judgment against Braswell Wood. The gist of his claim against Braswell Wood was that, after the sale of the land to the Pirnies and while their mortgage to Fussell was extant, the Pirnies executed a timber deed to Braswell Wood, which proceeded to cut $15,000 worth of timber from the mortgaged lands, paying that amount into a bank on the directions of Ronald K. Pirnie instead of to the mortgagee Fussell. In support of this motion, Fussell attached part of the deposition of John Braswell, owner of Braswell Wood, the bank check evidencing payment for the timber drawn by Braswell Wood, the mortgage from the Pirnies to Fussell, the timber deed from the Pirnies to Braswell Wood, and the two affidavits of Fussell himself. Braswell Wood did not respond to this motion by affidavit or otherwise, nor did Braswell Wood file any post-judgment motions. Braswell Wood did appeal from the summary judgment.
The controlling question on appeal is whether or not summary judgment was appropriate in this case. Rule 56, A.R.Civ.P., provides in pertinent part:
 "(c) . . . The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .
". . .
 "(e) . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
 I.
Fussell contends that summary judgment was proper in this case because Braswell Wood never, by affidavit or otherwise, responded to Fussell's motion, and thus Braswell Wood failed to meet the requirement of showing that there was a genuine issue for trial. We disagree.
When Braswell Wood answered Fussell's complaint, it raised certain defenses, set forth below, based on an agreement between Fussell and the Pirnies to reinstate the mortgage:
"FIRST DEFENSE
 "These Defendants allege that Plaintiff, Paul B. Fussell, Sr., waived his right to sue in conversion for the cutting of *Page 70 
said timber by entering into the agreement to reinstate the mortgage and accepting the consideration paid therefor by Defendants Pirnie.
"SECOND DEFENSE
 "These Defendants allege that the execution of the agreement to reinstate the mortgage by the Plaintiff, Paul B. Fussell, Sr., and his acceptance of the payment of $20,790.26 in consideration thereof constituted a release as to any wrongful acts for the cutting of said timber.
"THIRD DEFENSE
 "The Plaintiff, Paul B. Fussell, Sr., is estopped from claiming damages for conversion of said timber because of his allowing the mortgage indebtedness to be reinstated.
"FOURTH DEFENSE
 "Plaintiff, Paul B. Fussell, Sr., by the execution of the agreement to reinstate the mortgage attached as Exhibit A to the complaint, with knowledge of the facts relating to the cutting of the timber alleged in the complaint, duly ratified and confirmed, in all respects, the sale of this timber by the Defendants Pirnie, to Defendant Braswell Wood Co., Inc. Said Plaintiff thereby elected to consider said timber sale a proper and valid sale, and further agreed to look to the foreclosure of said mortgage as his remedy in the event the Defendants Pirnie defaulted in the terms of said agreement to reinstate the mortgage.
"FIFTH DEFENSE
 "By the execution of the agreement to reinstate the mortgage attached as Exhibit A to Plaintiff, Paul B. Fussell, Sr.'s, complaint, said Plaintiff and the Defendants Pirnie, agreed to the substitution of said agreement in place of the original mortgage agreement and thereby discharged the Defendants Pirnie, and Defendant, Braswell Wood Co., Inc., from any ability for the cutting of said timber."
Here, as in Imperial Group, Ltd. v. Lamar Corp.,347 So.2d 988, 989 (Ala. 1977), the "plaintiff-movant [here, Fussell] offered no allegations to negative" the defenses raised by Braswell Wood in its answer. In Imperial Group this Court reiterated the well established rule that:
 "A motion for summary judgment may be granted only when there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law. Birmingham Television Corporation v. Water Works, 292 Ala. 147, 290 So.2d 636 (1974)." 347 So.2d at 989.
Furthermore, even though no affidavits were filed by Braswell Wood in opposition to Fussell's motion for summary judgment, the court, nevertheless had to consider
 "any material that would be admissible at trial and all evidence of record as well as material submitted in support of or in opposition to the motion when ruling on [the] motion for summary judgment. Morris v. Morris, 366 So.2d 676 (Ala. 1978). See also, 10 C. Wright A. Miller, Federal Practice and Procedure, § 2721 (1973). [A]ll evidence of record, as well as that evidence formally submitted in support of or in opposition to a motion for summary judgment, should be considered in ruling on the motion."
Fountain v. Phillips, 404 So.2d 614, 618 (Ala. 1981). AccordSpeigle v. Lott, 423 So.2d 163 (Ala. 1982).
In addition, the following quotation taken from C. Wright,Handbook of the Law of Federal Courts, § 99 at 664 (4th ed. 1983), is apropos:
 "The motion lies whenever there is no genuine issue as to any material fact. It follows that a formal denial in an answer should not necessarily defeat such a motion as otherwise the rule could be rendered nugatory at will. To take a simple example, in an action [on] a promissory note, the defendant in his answer denies the making of the note.
Plaintiff moves for summary judgment, accompanying his motion with an affidavit of a person who swears that he saw the defendant sign the note. If the defendant does not file an opposing affidavit, raising a genuine issue as to this fact, summary judgment should be rendered for plaintiff." (Emphasis added.) *Page 71 
Because Fussell offered nothing to contradict the defenses raised by Braswell Wood in its answer, summary judgment was improper if granted merely because Braswell Wood rested on its pleadings. Nevertheless, we find the following caution given inImperial Group, Ltd. v. Lamar Corp., supra, at 989-900, instructive, and it bears repeating in this case:
 "Having so ruled, we should emphasize that a party cannot always rely upon the allegations and denials of his pleadings to establish a genuine issue of fact. When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of the pleadings. In fact, it can be perilous for the opposing party neither to proffer any countering evidentiary materials nor to file an affidavit. Ray v. Midfield Park, Inc., [293 Ala. 609, 308 So.2d 686
(1975)]. For instance, had the movant here presented evidence to negative defendant's defense of estoppel, defendant could not merely rest on the allegation in its counterclaim that estoppel had occurred."
(Emphasis added.)
 II.
Notwithstanding all of the above, Fussell contends, in essence, that all of the defenses raised by Braswell Wood must fail as a matter of law, and therefore, that summary judgment was proper. We do not agree as to the first four defenses.
Because our analysis depends, in part, on the construction of the agreement to reinstate the mortgage entered into by Fussell and the Pirnies after the timber was cut, it is set forth in its entirety below:
"AGREEMENT TO REINSTATE MORTGAGE
 "THIS AGREEMENT made and entered into the 23rd day of April, 1981, by and between RONALD K. PIRNIE AND SANDRA K. PIRNIE (herein referred to as Mortgagors) and PAUL B. FUSSELL, SR. (herein referred to as Mortgagee).
"WITNESSETH:
 "WHEREAS, heretofore on, to-wit: the 29th day of February, 1980, the Mortgagors executed a promissory note in favor of Mortgagee which promissory note was secured by a real estate mortgage which mortgage is duly recorded in the Probate Office of Macon County, Alabama, in Mortgage Book 361, page 291, and in the Probate Office of Bullock County, Alabama, in Mortgage Book 272, page 697; and
 "WHEREAS, without the consent or permission of the Mortgagee, the Mortgagors sold and allowed the cutting of timber from the mortgaged premises thereby violating the rights of the Mortgagee in and to the mortgaged property and thereby defaulting under the terms of the mortgage; and
 "WHEREAS, the Mortgagors failed to pay the installment of principal and interest which was due and payable on, to-wit: the 28th day of February, 1981, the principal installment being $10,000.00 and the accrued interest being $10,000.00 as of February 28, 1981; and
 "WHEREAS, the Mortgagee has declared the default of the Mortgagors and has accelerated the indebtedness pursuant to the terms of the note and mortgage and has commenced foreclosure proceedings under the power of sale set forth in the mortgage; and
 "WHEREAS, the Mortgagors are desirous of reinstating the mortgage and paying the sum on the original terms, and the Mortgagee is willing to reinstate the mortgage subject, however, to the terms, provisions and conditions herein set forth.
 "NOW, THEREFORE, for and in consideration of the premises and in consideration of the mutual covenants and conditions herein contained the parties hereto do hereby state, covenant, represent, affirm and agree as follows:
 "1. Simultaneously with the execution of this Agreement, the Mortgagors shall pay over to the Mortgagee the following sums:
 "$10,000.00 Principal "$10,000.00 Interest due as of 2/28/81 *Page 72 
"$ 500.00 Attorney's Fee "$ 123.59 Costs "$ 166.67 Interest on the delayed ---------- payment of principal "$20,790.26
 "2. The Mortgagors, having previously cut and removed timber from the property, hereby agree, at Mortgagors' sole cost and expense, to cause the entire tract of mortgaged land to be cleared of trees, stumps, roots, debris; to cause the surface of the said property to be repaired and restored after such clearing so that it can be cultivated with the use of ordinary farm equipment; to provide such drainage as may be necessary in order to convert the said property from its present condition into cultivatable farm land.
 "3. Upon receipt of the amount hereinabove stated and upon completion of the requirements set forth in Paragraph 2 above, the said mortgage and note shall be reinstated and shall be payable according to their original terms. Mortgagee agrees to withdraw the present foreclosure proceedings; subject, however, to reinstitution in the event that the Mortgagors fail to perform the requirements of Paragraph 2 to the satisfaction of the Mortgagee.
 "4. The requirements of Paragraph 3 shall be commenced immediately, pursued diligently, and completed before the 1st day of May, 1982.
 "5. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective heirs, personal representatives, successors and assigns.
 "IN WITNESS WHEREOF, the parties hereto have set hereunto their hands and seals on the date first above written.
"/s/ PAUL B. FUSSELL, SR."
(Emphasis added.)
Before this agreement was reached, the mortgage note was in default, the timber had been cut, and Fussell had accelerated the debt and begun foreclosure proceedings. Pursuant to this agreement, however, foreclosure proceedings were withdrawn subject to reinstitution if the Pirnies failed to perform the required clearing of the property, which they did fail to perform.
As between Fussell and the Pirnies, this agreement operated as a ratification of the sale of timber, thereby releasing the Pirnies of their liability in conversion if performed. However, whether Fussell intended to look to the Pirnies' performance of this agreement as a full satisfaction, thereby intending to release Braswell Wood from its liability in conversion, was properly a question for a jury.
By statute, Code of 1975, § 12-21-109, written releases or discharges generally must be given effect according to the parties' intention:
 "All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, must have effect according to the intention of the parties thereto."
In Steenhuis v. Holland, 217 Ala. 105, 107, 115 So. 2, 4
(1927), the Court pointed out:
 "More difficulty arises when we come to consider whether a given release evidences a full and complete satisfaction of plaintiff's demand, and therefore [is] available to all joint tort-feasors, or whether it releases only the party named, leaving the cause of action unsatisfied as against others, except as payment pro tanto reduces the existing demand.
". . .
 ". . . But where the release expresses no purpose to satisfy the demand in full, and is limited in terms to a discharge of the party to whom given, it has been declared that whether there was an intention to accept the sum paid in full satisfaction may become an issue for the jury, not one for the court upon construction of the paper alone. Dwight Mf. Co. v. Word, 200 Ala. 221, 75 So. 979; Thompson v. N.C. St.L.Ry., 160 Ala. 590, 49 So. 340; Boyles v. Knight, 123 Ala. 289, 26 So. 939."
In Dwight Mfg. Co., v. Word, 200 Ala. 221, 226, 75 So. 979, 984
(1917), cited in Steenhuis, *Page 73 supra, just as in the present case, the release in question named only one of the defendants. The Court held as follows:
 "[T]he issue was whether plaintiff accepted the pecuniary benefit from his employer, the telephone company, as a full satisfaction for the injury suffered, or merely in release of the telephone company and as a satisfaction pro tanto. Conceding, for the argument that defendant . . . and the telephone company were both tort-feasors with respect to the dangerous proximity of their respective wires, and equally liable to plaintiff, the intention of plaintiff, as deduced from the language of the release, and the character and circumstances of the settlement which it evidenced, was a question for the jury. Home Tel. Co. v. Fields, 150 Ala. 306, 312, 43 So. 711, citing 24 A. E. Enc. Law (2d Ed.) 307; Smith v. Gayle, 58 Ala. 600.
 "There was no error in admitting the testimony of an attesting witness that, when the release was executed, there was no statement or understanding that it released the defendant company also. . . ." (Emphasis added.)
From the material before the trial court, it cannot be held as a matter of law that Fussell, the mortgagee, by entering into the agreement with the Pirnies, did not intend to ratify the sale of the timber to Braswell Wood and look only to the performance of the agreement by the Pirnies as full satisfaction of his damage from the sale of the timber. Nor is it clear, as a matter of law, that Fussell intended the performance by the Pirnies to operate only as satisfaction protanto. The question of Fussell's intent was for a jury to decide. Accord, Thompson v. Nashville, C. St. L. Ry.,160 Ala. 590, 49 So. 340 (1909).
Furthermore, "it is well settled that no person . . . will in equity be permitted to receive and retain that which forms the consideration for an invalid sale or disposition of his property, and at the same time to retake the property [or claim damages therefor], to the prejudice of those who have in good faith acted upon the transaction as valid." Hobbs v. Nashville,C. St. L. Ry. Co., 122 Ala. 602, 609, 26 So. 139, 141 (1899). Such conduct is subject to the defense of equitable estoppel or estoppel in pais asserted by Braswell Wood in its answer. InEllison v. Butler, 271 Ala. 399, 124 So.2d 88 (1960), the following definition of equitable estoppel was approved:
 "In 19 Am.Jur., Estoppel, § 34 equitable estoppel or estoppel in pais is defined as the principle of law `by which a party who knows or should know the truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact [through] which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.' . . ." 271 Ala. at 401-402, 124 So.2d at 88.
In Courington v. Birmingham Trust National Bank, 347 So.2d 377,380 (Ala. 1977), this Court recognized that "[a]cquiescence is a form of estoppel, . . . and is applicable when there is some element of neglect." Furthermore, in Cochran v. Cochran,247 Ala. 588, 590, 25 So.2d 693, 694 (1946), the Court espoused the following basis for asserting the defense of estoppel, quoting 2 Pomeroy on Equity, § 965, p. 2094:
 "`"When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter under the belief that the transaction has been recognized or freely abstains for a considerable length of time from impeaching it, so that the other *Page 74 
party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity." . . .'"
See also Porter v. Peeke, 429 So.2d 948, 951 (Ala. 1983), where this Court held as follows:
 "The filing of the suit is significant only because it represents Porter's first affirmative act contrary to his otherwise manifested intent to resign. In other words, we do not hold that his suit is barred as untimely filed; rather we hold that his five and one-half month acquiescence in the council's acceptance of his apparent resignation (which acquiescence remained unbroken until the filing of this suit), in view of the absence of any suggestion that the council's acceptance and reliance were unreasonable, estops him from now asserting that he had not resigned. . . ." (Emphasis added.)
In the context of a summary judgment, this Court, in ImperialGroup, Ltd. v. Lamar Corp., supra, at 989, held that "[b]ecause `estoppel' is a mixed question of law and fact [where plaintiff/movant offered nothing to negative this defense], it is plain that material issues of fact remain, and, therefore, summary judgment was premature." In so concluding, the Court relied on Humphrey v. Boschung, 287 Ala. 600, 608,253 So.2d 769, 775 (1971), in which the following quotation from 28 Am.Jur.2d Estoppel and Waiver, § 149, p. 831, was approved:
 "Generally speaking, the existence of an estoppel in pais is a mixed question of law and fact. . . . Unless only one reasonable inference can be drawn from the evidence, estoppel is a question for the triers of the facts, the jury or the trial court. On the other hand, if the facts are undisputed and only one reasonable inference in such respect can be drawn from the evidence, the question whether an estoppel is established is one of law for the court." (Emphasis added.)
Braswell Wood also raised the defense of waiver, which is defined as the intentional relinquishment of a known right.Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 82 So.2d 345
(1955). The Court in Bell went on to hold:
 "While it is to be conceded that intent necessary to constitute waiver may be implied from the act of the party involved, the inquiry still is what was the intent of the party as manifested by his actions. . . ." 263 Ala. at 357, 82 So.2d at 347.
Furthermore, "[a]n intention to waive a right may be found where one's course of conduct indicates the same or is inconsistent with any other intention." Givens v. GeneralMotors Acceptance Corp., 56 Ala. App. 561, 564, 324 So.2d 277, 270 (1975).
As with the defense of release, we cannot say as a matter of law that Fussell did not intend to waive his right to bring an action in conversion against Braswell Wood. Here again, intention is appropriately an issue for the jury. Nor can we say, with respect to the defense of estoppel, that only one reasonable inference can be drawn from the evidence in the present case, making the issue one of law for the trial court. In reviewing the grant of a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the non-moving party. Houston v. McClure, 425 So.2d 1114
(Ala. 1983).
In the present case, not only was there nothing submitted by Fussell to refute or negative the defenses of waiver and estoppel raised by Braswell Wood in its answer, Imperial Group,Ltd., supra, but also there was evidence of record which, when viewed most favorably toward Braswell Wood, would support these defenses. First, there is John Braswell's deposition in which he testified that, based on what he had been told by the Pirnies, he believed that the matter had been "straightened out" between the Pirnies and Fussell. In addition, with respect to the agreement between the Pirnies and Fussell, it is factually relevant that it was not until after the *Page 75 
Pirnies had failed to perform under the terms of the agreement, by failing to clear the property for farming, that Fussell brought his action in conversion against Braswell Wood. As in the case of Porter v. Peeke, quoted from supra, this is not to say that the action is barred as untimely filed; rather, a reasonable inference which could have been drawn from the timing of the action is that Fussell had intended the performance by the Pirnies to suffice as his satisfaction, and that he had acquiesced in the cutting of the timber insofar as Braswell Wood's liability was concerned, because he intended to waive his right to sue in conversion.
Nevertbeless, we can say, as a matter of law, that the agreement to reinstate the mortgage did not operate as a substitution or novation with respect to the original mortgage agreement between Fussell and the Pirnies. In order for there to have been a novation, the pre-existing debt must have been extinguished. 58 Am.Jur.2d Novation, §§ 22, 23 (1971). Here, the terms of the original mortgage were reinstated without any changes. The promise by the Pirnies to clear the property and catch up the delinquent payments furnished the consideration for the withdrawal of foreclosure proceedings begun as a result of the mortgage being in default for nonpayment and the cutting of the timber. The terms of the original reinstated mortgage, however, were not varied.
Based on the foregoing, we conclude that at least a scintilla of evidence was furnished on each of the defenses raised, except novation or substitution, thereby precluding summary judgment. We need not reach any other issues raised by Braswell Wood. Accordingly, the judgment is due to be reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Other parties were subsequently joined and other issues litigated; however, those parties and issues are not involved in this appeal.