THE STATE, EX REL. METZGER, *v.* BROWN, SECY. OF STATE.

[Cite as State, ex rel. Metzger, v. Brown, Secy. of State, 1 Ohio Misc. 70.]

(No. 219413—Decided May 4, 1964.)

IN MANDAMUS: Court of Common Pleas of Franklin County.

*Mr. James F. DeLeone,* for relator.

*Mr. William B. Saxbe,* attorney general, and *Mr. David L. Kessler,* for respondent Secretary of State.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Hugh A. Sherer* and *Messrs. Knepper, White, Richards & Miller,* for intervening respondents.

HARTER, J.   This is an action in mandamus to compel the Secretary of State to appoint one Carl Whitacre as a Republi-

can member of the Clinton County Board of Elections for a regular term commencing March 1, 1964, and ending February 29, 1968.

This appointment was recommended to the Secretary of State, as contemplated by the Ohio statute, by a group of persons who considered themselves to be a majority of the Clinton County Republican Executive Committee, acting in a properly called meeting of that committee held January 23, 1964, presided over by the vice-chairman of such committee. In accordance with statute, written notification of Whitacre's recommendation was mailed on January 24, 1964, to the Secretary of State. In the normal course of events, the Secretary of State would have appointed Whitacre in accordance with this recommendation but, about January 30, 1964, and before he had made the appointment, he received notification that one Lawrence R. Lyons was the recommended appointee for the position on the board of elections through action of an expanded Clinton County Republican Executive Committee, taken at a meeting held on January 29, 1964.

The Secretary of State, not knowing which of the two men was the one actually recommended for the appointment, appointed neither, and this suit in mandamus resulted on February 10, 1964. Thereafter, representatives of the expanded group which had met on January 29, 1964, intervened in this cause and they pray for a writ of mandamus to compel the Secretary of State to appoint their man, Lyons, to the post.

There are many interesting background facts which lead up to this unusual situation but, under the view that I take of the matter, I feel that no useful purpose would be served by my reciting them in this opinion. As I see it, the basic problem which is presented by this litigation grows out of the admitted fact that one George Behmyer had been a member of the Clinton County Republican Executive Committee up to September 1963, but he had removed his legal domicile or residence from Clinton County and established a voting residence in Hamilton County, Ohio, sometime in August 1963, or earlier.

It is the contention of the interveners in this case that, because George Behmyer did not "resign" his membership on the Clinton County Republican Executive Committee until January 29, 1964, he was still a voting member at the time the

January 23, 1964, meeting was held and, for reasons which will develop later, the action of January 23, 1964, naming Carl Whitacre was not legally effective because done by less than a quorum of the executive committee.

The petitioner contends, on the other hand, that Behmyer's voluntary removal of his residence and domicile from Clinton County to Hamilton County had the effect of abandoning his office as a member of the executive committee, and that such committee was fully justified in so regarding it through its filling of this vacancy on the committee at a September 18, 1963, meeting by designating one W. W. West to take the vacated place. If this September 18, 1963, action of the committee, declaring Behmyer no longer a member and designating West in his place, was legally proper, a quorum *did exist* with West participating, at the January 23, 1964, meeting when Whitacre was recommended for appointment to the board of elections, and such designation was legally effective.

So, the ultimate issue, raised without dispute in the facts and on the motions of the respective parties for summary judgment, relates to the status of Behmyer—was his position on the executive committee, both as a member and its secretary, abandoned and vacated by his voluntary removal of his residence from Clinton County in August 1963?

Counsel for the interveners contend that Behmyer *did not forfeit* his membership on the committee by moving out of the county, and they rely chiefly in support of this contention upon a 4 to 3 decision of the Supreme Court of Ohio in 1960. In that case, *State, ex rel. Jeffers, v. Sowers* (1960), 171 Ohio St. 295, it was held that a candidate for county engineer need not be an elector of the county where he sought such office. The four-judge majority in that case traced the provisions of the Ohio Constitution back to 1802 and found what I choose to call a "blind spot." Their conclusion was that a candidate had to be an elector *of the state* but not necessarily of the county where he aspired to office. I choose, for my purposes, to limit the holding of that case to its unique facts; I do not consider it controlling on the facts now before me.

I must admit that I find no direct precedents for the problems confronting me, either in the statutes or in reported court decisions. I do, however, find some help by analogy.

In a 1962 Opinion by the Attorney General, No. 3108, it was suggested (and this is not binding upon this court, of course) that a person who has moved out of a county to enter employment with the state and has retained his residence for voting purposes pursuant to Section 3503.02(G), Revised Code, is an elector and resident of such precinct within this section (Section 3517.02, Revised Code) and may be appointed a county central committeeman and chairman of the county executive committee of his party in that county.

This Attorney General's opinion is not directly in point, of course, but it gives me a valid approach to my problem. If it had not been for the clear language of Section 3503.02(G), Revised Code, I feel it is more than probable that it would have there been held that such person *could not* have been eligible to serve on the central committee *or* the executive committee of his party.

My research discloses an early Ohio case, which I consider in point next. It was held in *State, ex rel. Ives,* v. *Choate* (1842), 11 Ohio 511, in paragraphs 1 and 2 of the syllabus, as follows:

"The Legislature may change the boundaries of a county, and when such change places an Associate Judge within the limits of another county, who does not, within a reasonable time, remove into the limits of the county for which he was appointed, he forfeits his office.

"A person who attempts to exercise the office of Associate Judge in a county wherein he does not reside, is guilty of intrusion and usurpation."

As I see it, there is nothing actually sacred in terms; this latter case speaks of a "forfeiture" of office; we sometimes hear of "abandonment" of office; and we often hear of "resignations" from office. There was no true resignation from office, as an executive committee member, by Behmyer in our facts, but, in my opinion his overt act of leaving Clinton County had *some* legal significance which may be appraised, by analogy, by looking at "resignation" authorities.

It has been held that at common law a resignation of an office did not take effect so as to create a vacancy until accepted by the proper authority. However, the Supreme Court of Ohio has held that a resignation without acceptance creates a

vacancy to the extent, at least, of giving jurisdiction to appoint or elect a successor unless otherwise provided by statute. See 44 Ohio Jurisprudence 2d 664, Public Officers, Section 166.

In further development of this "resignation" analogy, the courts have frequently been called upon to pass on the effect of an attempt to withdraw a resignation after it has been tendered. Emphasis has been placed in these decisions upon the fact that the appointing authority has, or has not, acted upon the resignation. If no action has been taken, the resignation may be subject to withdrawal; if there has been action by the appointing authority in reliance upon the resignation by filling the vacancy created thereby, the doctrine of estoppel may be effectively invoked against the individual who has resigned. See 44 Ohio Jurisprudence 2d 666, Public Officers, Section 168; and *State, ex rel. Kraft,* v. *City of Massillon* (1951), 89 Ohio App. 339.

Again, I point out that Behmyer did not technically resign from this committee; he did, however, take an overt step toward forfeiture or abandonment of his position on the committee by his voluntary removal of his residence from Clinton to Hamilton County. The committee, in my judgment, was fully justified in taking action regarding his position at its September 18, 1963, meeting, by, in effect, declaring his place vacant and filling such vacated place by appointing W. W. West in his place. Thereafter, Behmyer was in effect estopped from contending that the action taken by the committee in reliance upon his voluntary action was invalid. Since Behmyer was thus estopped, the interveners are also estopped from challenging action taken by the committee with West as the substituted, participating member. The interveners are in a derivative position with their rights rising no higher than, and subject to all the limitations imposed upon, Behymer's rights.

Under this analysis of the undisputed facts of this case, I come to the conclusion that the action of January 23, 1964, by a quorum meeting (Behmyer being gone and West legally serving in his place) was legally proper and their designee, Carl Whitacre, for appointment to the Board of Elections should prevail.

After the January 23, 1964, action was taken, the chairman of the executive committee, who had been absent from the

January 23, 1964, meeting, undertook a series of maneuvers to undo what had been done at the January 23, 1964, meeting but, as I see it, his maneuvers did not legally accomplish his desired result. He first assembled the Republican central committee on January 27, 1964, and had them expand the number of members constituting the executive committee by six; he then had those places filled. This was attempted under Section 3517.04, Revised Code. Then, the chairman, with his committee-packing theory (akin to Franklin D. Roosevelt's court-packing project), had the augmented executive committee meet on January 29, 1964, and designate Lawrence R. Lyons as the appointee to the board of elections, with notification thereof to the Secretary of State the next day.

As I see it, this January 29, 1964, action was abortive and ineffectual for the reason that no attempt seems to have been made at that meeting expressly to rescind the action of the September 18, 1963, meeting where Behmyer was ousted and West substituted, or of the January 23, 1964 meeting. In the interest of giving stability to solemn actions by executive committees of political parties, there should be, and is, a presumption of regularity to meeting action, with the burden of proving irregularity or rescission or other avoidance of the consequences of such meeting action placed squarely upon any contestants. The interveners here, occupying the position of contestants, have not met that burden, in my opinion.

Counsel for the respondents who have intervened in this case contend that, where there are conflicting actions taken by a public agency, that which is later in point of time should prevail as a repeal, overruling or rescission by necessary implication. I am unwilling to accept that contention. I hold, rather, that the interveners had the burden of proving the actions of the September 18, 1963, and January 23, 1964, meetings of this same executive committee, with full quorums present, were illegal, or that the action taken thereat was expressly rescinded at a later meeting. I reject the doctrine of "necessary implication" as having any application to this set of facts.

At the oral hearing on these motions for summary judgment, this court raised the question whether this case would become "moot" on May 5, 1964, when, by state law, new state central committee members would be elected at our state's

primary. On reflection, I have concluded that the issues *will not* become moot because the ultimate problem here is whether Carl Whitacre or Lawrence R. Lyons should become the appointee to the Clinton County Board of Elections to serve a term from March 1, 1964, to February 29, 1968. Since this term of office carries over substantially beyond the May 5, 1964, primary election, the case does not, in my opinion, become moot even though the membership of the central committee in Clinton County may well change completely on May 5, 1964.

Under all the circumstances, I feel compelled to find for the relator and against the intervening respondents in this case.

*Writ directed on petitioner's motion.*