JONES, Justice.
Plaintiff/Appellant Bill Porter initiated this cause on July 13,1981, seeking declaratory relief under Ala.Code 1975, § 6-6-220, on the question of who was the proper person to hold the position as President of the Selma, Alabama, City Council. Subsequently, Porter amended his petition, alleging, inter alia:
“(1) That Porter had no notice of the Special Called Meeting of the Selma City Council on January 31, 1981, and that therefore all business conducted as relates to his ‘resignation’ is null and void.
“(2) That the call of the Special Called Meeting of the Selma City Council on January 31,1981, was improper in light of Section 11-43-50, and that therefore the business conducted as relates to Porter’s ‘resignation’ is null and void and without legal effect.
“(3) That Porter had not lawfully or legally resigned and that Peeke was illegally sworn in as President of the Selma City Council.
“(4) That the City of Selma and Peeke are acting in such a manner as to deny Porter’s right to occupy the office of President of the Selma City Council.
“(5) That by formal resolution, the Selma City Council has requested that Peeke cease holding the office of President of the Selma City Council and that Peeke refuses to relinquish the office.
“(6) That on July 27,1981, Porter formally withdrew and rescinded his letter of resignation and that Peeke and the City of Selma continue to refuse to allow him to occupy that office.
“(7) That Peeke can not lawfully succeed to the office of President of the Selma City Council since he failed to receive the required number of votes to be elected to the office of President Pro Tern of the Selma City Council under Section 11-43^45, Code of Alabama, 1975.”
On April 20, 1982, Defendant/Appellee J.B. Peeke, Jr., filed a motion for summary judgment. The trial court, on June 1, 1982, entered an order granting Peeke’s motion.
We affirm.
FACTS

Parties:

Bill Porter, Plaintiff/Appellant, is a resident of Selma, Dallas County, Alabama, and served as a Councilman from Ward I for four years next preceding his election to the Office of President of the City Council on July 29, 1980.
J.B. Peeke, Jr., Defendant/Appellee, is a resident of Selma, Dallas County, Alabama, and was duly elected as Councilman from Ward II North, having been elected to that office in September of 1980; and from the time of the filing of this suit until the present, has been occupying the position of President of the Selma City Council.
The City of Selma, a Defendant/Appel-lee, is a municipal corporation whose governing body consists of a Mayor, who is elected city-wide, a President of the City Council, who is elected city-wide, and ten councilmen. The City is divided into five wards, Ward I being the westernmost ward and Ward V being the easternmost ward; and each ward is divided into a northern and southern district. Each councilman is elected from a District of a ward by the voters of that District.

Statement of Events:

Bill Porter was elected President of Selma City Council on July 29, 1980, following a city-wide run-off election. Porter assumed the office of President on October 6, *950 1980. In September of 1980, an election was held in Selma to elect councilmen to represent the ten districts of that municipality, two districts in each of the five wards. J.B. Peeke, Jr., was elected to represent Ward II North, and began discharging his duties on October 6, 1980. Subsequently, Peeke was elected and served as President Pro Tern of the Council.
On January 28, 1981, Porter met with Vaughan Russell, a long-time friend and local lawyer, for the purpose of discussing Porter’s contemplated resignation as President. His desire to resign was fueled by personal difficulties related to conflicting demands being made on him by his job and family at that time. During this meeting, Russell prepared a draft of a letter of resignation for Porter. Subsequently, the two men met a second time and revised the initial letter. The parties agreed that Russell would handle the “media” aspect of the prospective resignation by distributing the letter to the press, concurrently with its submission by Porter to City Clerk Hugh Wall and Defendant Peeke. Subsequently, but before Porter submitted the letter to the clerk or Peeke, Russell released the letter to the media in order to accommodate certain press deadlines, without Porter’s permission or knowledge.[1]
On Saturday, January 31, 1981, Porter and his family left Selma for a visit to Montgomery. Beginning in the late hours of Friday (the night before) and continuing through Saturday, when Porter was absent from the city, Peeke contacted the remaining council members and asked them to be present at a special meeting of the Council on Saturday, January 31, at 2:00 p.m. The purpose of the special meeting was to consider the letter of resignation of Porter. At the- meeting, which Porter did not attend, Peeke was elected as the new Council President.
Approximately five and one-half months later, Porter initiated formal proceedings, seeking to contest the legality of Peeke’s actions.
DECISION
Because of our holding, we pretermit discussion of the issues raised by the parties, save one: Assuming, without deciding, that Porter’s “resignation” was ineffective, does his subsequent conduct nevertheless estop him from asserting his right to the office of President of the City Council? We hold that it does.
Regarding his delay in commencement of these proceedings from the date Defendant Peeke assumed the office of Council President, Plaintiff Porter stated the following in his sworn deposition.
“Q. You were aware that a meeting was held, were you not?
“A. I did not know the meeting was going to be held to accept any resignation.
“Q. Where were you on that date?
“A. I was in Montgomery.
“Q. On that day. In any event, you later learned that a meeting had been held?
“A. I learned, right. After I got back.
“Q. And you also learned that your resignation had been presented and accepted by the Council?
“A. I heard that, right.
“Q. And from that day until — and when I say that day, I am speaking now of January 31, 1981 — until July 27 of 1981, did you do or perform any acts to assert or claim the office of the President of the Selma City Council?
“A. Did I make a public — do anything public?
“Q. Did you do or perform any act, public, private, or otherwise?
*951 Yes. At one time I wrote a letter rescinding my letter of resignation, and had it in my pocket at the City Council meeting.
Was that the letter of July 27? <y
No. That was a letter — I think it was the same night that y’all were there talking about de facto, and I saw you in the hall, and told you that I ought to take the seat back, and you grinned and walked off. <d
Do you know when that was?
I cannot recall the date.
But you didn’t; did you?
I did not.
And J.B. continued to hold the office without any public objection or protestation on your part; did he not? <0
Yes. C
In fact, he held that office without objection on your part until July 27 of 1981, did he not, which is the date of ... G*
No. I don’t know if you would call it an objection or not, but I know I told the news media that I was considering filing suit sometime before I did.
Do you remember when that was? o*
I would have to guess, maybe six weeks before I did it.
When, in fact, did you file the suit? <y
I believe it was July 13th. <n
This action was filed on July 13, 1981? o*
Yes, sir. <
So, that was the first time you had taken any action to regain your seat with the City Council? <y
Legally. <
Okay. And had you taken any action other than this, legally or otherwise? a-
Just an announcement, as I said, about six weeks before that that I was considering legal action.
That you were considering legal action? O’
:A. Yes.
But, in fact, you did not perform any of the duties of the office, did you? Q.
No. A.
Now, Bill, from and after the period from January 30, 1981, until this Civil Action CV-81-138 was filed by you on July 13, 1981, during that period of time, which is five and a half months, approximately, did you receive any pay from the City of Selma for performing duties of any type? Q.
“A. No.
“Q. Did you perform any duties of any kind for the City of Selma?
“A. No.”
In light of the foregoing testimony, and the dilatory manner in which Porter sought redress for his alleged grievances, we feel constrained to hold that he should now be estopped from asserting any claim to the office of President of the City Council.
Our holding with respect to the five and one-half month delay in filing this action is not to be confused with the application of a statute of limitations or the doctrine of laches. The filing of the suit is significant only because it represents Porter’s first affirmative act contrary to his otherwise manifested intent to resign. In other words, we do not hold that his suit is barred as untimely filed; rather, we hold that his five and one-half month acquiescence in the council’s acceptance of his apparent resignation (which acquiescence remained unbroken until the filing of this suit), in view of the absence of any suggestion that the council’s acceptance and reliance were unreasonable, estops him from now asserting that he had not resigned. For a case invoking the doctrine of estoppel in a public office context, see State v. Brown, 1 Ohio Misc. 70, 205 N.E.2d 599 (1964).
In Mazer v. Jackson Insurance Agency, 340 So.2d 770 (Ala.1976), our Court stated:
“The purpose of equitable estoppel and promissory estoppel is to promote equity *952 and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience.” 340 So.2d at 772.
In Ellison v. Butler, 271 Ala. 399, 124 So.2d 88 (1960), estoppel is defined as follows:
“Several elements must be present before the courts will invoke an equitable estoppel. In 19 Am.Jur., Estoppel, § 34 equitable estoppel or estoppel in pais is defined as the principle of law ‘by which a party who knows or should know the truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.’ ” 271 Ala. at 401-402, 124 So.2d 88.
Obviously, the time frame within which one should assert his rights, and thus prevent the invocation of the doctrine of equitable estoppel, will vary according to the facts of each case. While not expressing an opinion as to when Porter should have formally acted to reclaim his position, we think that five and one-half months far exceeds what might be characterized as a “reasonable” period under the circumstances of this particular case. Consequently, we find no inequity in denying Porter’s requested relief at this juncture.
AFFIRMED. '
MADDOX, FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., recuses himself.

. Indeed, the evidence is clear that Porter at no time ever delivered, nor did anyone on his behalf deliver, the letter of resignation to anyone authorized to accept his resignation. He did, however, give a copy of the letter to his fellow councilman Walter Cecil Williamson on Friday before the special meeting of the Council on Saturday. Williamson in turn gave it to Peeke for inclusion in the minutes of that meeting.