Mid-South Fiberglass, Inc., brought an action against George W. Smith Steel Buildings, Inc. ("Smith Steel Buildings"), and George W. Smith, individually, for breach of a contract to provide insurance coverage on a building that Mid-South purchased from Smith Steel Buildings. The case was tried without a jury, and the court entered judgment in favor of Mid-South against Smith individually in the amount of $33,635.88. The judgment also ordered Smith to specifically perform his agreement to provide insurance for the remaining term of the bond issued in connection with the sale of the building, i.e., until September 1, 1994. Smith appeals from this judgment.
The principal owners of Mid-South met with Smith in December 1983 to discuss the prospect of purchasing a building owned by Smith Steel Buildings, of which Smith is the principal owner and president. Mid-South was to use the building for manufacturing fiberglass boats. On cross-examination David Long, president of Mid-South, testified as follows concerning the purchase price for the building and Smith's agreement to pay for insurance:
 "Q Mr. Long, you all were trying to negotiate and buy this building and Mr. Smith was going to sell this building to you, and the only two prices that were *Page 651 
mentioned, if I understand your testimony correctly, is George Smith said I'll take $625,000 for it; is that correct?
"A That's correct.
"Q And you wanted to buy it for $600,000?
"A That's correct.
 "Q To get his price, George Smith agreed to provide or Marvin said if he'll provide the insurance we'll pay the Six Twenty-five?
 "A No, George said he would provide the insurance on the buildings, and Marvin said if you do that we'll pay the Six Twenty-five."
Thus, the court could have found that Smith's promise to pay for insurance was part of the consideration for the contract.
The parties decided to make the purchase pursuant to a bond issue through the Industrial Development Board of Cullman County ("IDB"). Prior to making the bond arrangements, Smith and an officer of Mid-South signed an agreement that, among other things, required Smith to make several repairs to the building and to "pay insurance on buildings for length of bond issue." At that time the annual insurance premiums were approximately $6,800.
IDB approved the bond issue, and two contracts were entered into. The first was a "Mortgage and Indenture" between IDB and Smith Steel Buildings. By it, IDB mortgaged its interest in the building (which Smith apparently deeded to IDB by a separate instrument not included in the record) to Smith Steel Buildings. The mortgage expired upon payment of the bond that IDB executed as part of the mortgage and indenture. The second was a "Lease Agreement" between IDB as lessor and Mid-South as lessee. Mid-South was to pay rent sufficient to allow IDB to make its bond payments to Smith Steel Buildings. The lease agreement gave Mid-South an option to purchase the property for a nominal consideration over and above the rent payments. The mortgage and indenture agreement contained a clause whereby IDB was required to "cause the Lessee at its cost and expense to insure the Project." The lease agreement contained a clause that said that the "Lessee will cause the Project to be insured and at all times keep the Project insured." Contrary to the facial import of these provisions, however, and consistent with the earlier agreement between Smith and Mid-South, Smith continued to pay the insurance premiums for approximately one and one-half years, although the premiums increased from $6,800 annually to $22,000 per year. In March 1986 the insurance was cancelled and Mid-South was forced to purchase insurance on the building from another insurer. At that time Smith ceased making insurance payments.
Smith claims that the mortgage and indenture and the lease agreement supersede the agreement between Mid-South and himself; that the prior agreement is merged into the mortgage and indenture and the lease agreement; and that those two documents recite the entire agreement among the parties.
This Court has held that all prior negotiations are merged into a written contract that purports to cover an entire transaction. Guilford v. Spartan Food Systems, Inc.,372 So.2d 7 (Ala. 1979).
The lease agreement contained a merger clause. Smith argues that it acts to extinguish any agreements between Mid-South and himself not set out in that lease agreement. However, the merger clause in the lease agreement states that the lease agreement "shall completely and fully supersede all other prior agreements both written and oral, between the Lessor and theLessee." (Emphasis added.) This clause clearly states that any and all other agreements between IDB and Mid-South are merged into the lease agreement. The clause, however, says nothing about any prior agreements between Mid-South and Smith. Neither is there any other indication in the IDB contracts that all prior agreements between Smith and Mid-South were extinguished.
Smith continued to pay the insurance premiums for a period of one and one-half years after the mortgage and indenture and the lease agreement were entered into. *Page 652 
This is evidence that Mid-South and Smith intended for the prior agreement to survive the mortgage and indenture and the lease agreement.
Smith argues that the mortgage and indenture and the lease agreement created a novation that invalidated the prior agreement between Mid-South and himself.
A novation is the substitution of one contract for another, the effect of which is to release him who is bound by the original contract. Cammorata v. Woodruff, 445 So.2d 867 (Ala. 1983). In order for there to be a novation, the pre-existing obligation must be extinguished. Braswell Wood Co. v. Fussell,474 So.2d 67 (Ala. 1985).
Smith's continued payment of the insurance premiums for one and one-half years after the execution of the mortgage and indenture and the lease agreement is evidence that the pre-existing obligation was not extinguished. This evidence supports the trial court's implied finding that the pre-existing obligation was not extinguished; therefore, the trial court did not err in holding that there was not a novation.
Smith next contends that he agreed to pay the insurance premiums only up to $6,000 per year and that any amount above that was to be paid by Mid-South. The trial court found that no such agreement existed between Smith and Mid-South.
When, as here, the trial court has heard ore tenus testimony, there is a presumption that its judgment is correct. Conley v.City of Montgomery, 414 So.2d 58 (Ala. 1982), cert. denied,459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983). When the trial court makes its findings of fact after hearing conflicting evidence, every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong. Gulledge v. Frosty Land FoodsInternational, Inc., 414 So.2d 60 (Ala. 1982). After careful review of the record, we find that the trial court's findings of fact and application of law are supported by the evidence; they will not be disturbed by this Court on appeal.
Smith also argues that the dramatic increase in the insurance premiums could not have been foreseen by the parties and, therefore, that the parties lacked mutual assent.
When the parties entered into the agreement for Smith to provide the insurance on the building, both parties were aware that insurance rates fluctuate. Both parties were aware that Mid-South would be using the building for manufacturing fiberglass boats, an activity that could be considered hazardous. While the rate increase was larger than the parties anticipated, the amount of the increase does not show that there was no meeting of the minds when Smith agreed to pay insurance on the building "for [the] length of [the] bond issue."
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.