INGRAM, Justice.
The Bank of Tallassee (“the Bank”) sued to collect on a promissory note originally executed by Ronnie D. Golden. Golden counterclaimed, alleging fraud. The trial court entered a summary judgment for the Bank on both its claim and on Golden’s counterclaim. Golden appealed.
The dispositive issue is whether the trial court correctly held that Golden was responsible for the promissory note debt.
A motion for a summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank, 540 So.2d 732, 734 (Ala.1989). Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmov-ant to go forward with evidence demonstrating the existence of a genuine issue of fact. Grider v. Grider, 555 So.2d 104 (Ala.1989). This Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359 (Ala.1993).
Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). In order to defeat a defendant’s properly supported motion for summary judgment, the plaintiff must create a genuine issue of material fact by presenting substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Golden was the president and the owner of AAA Electric Company (“AAA”) on March 3, 1987, when he signed a promissory note in the amount of $150,000 to secure an advance on a line of credit for AAA with the Bank of Tallassee. Golden signed as president of AAA and also as an individual. Soon after Golden signed the note, William Earl Sayers, who is not a party to this action, bought the company from Golden. In the purchase agreement, Sayers expressly agreed to assume the debt from Golden. However, the $150,000 promissory note that Golden had executed in favor of the Bank of Tallassee contained the following language:
“OBLIGATIONS INDEPENDENT: I understand that I am obligated to pay this note even if any other person has also agreed to pay it. I agree that you may, without notice, release any of us, release or substitute any collateral, fail to perfect any security interest or otherwise impair any collateral, waive any right you may have against any of us, extend new credit to any of us, or renew or modify the note without affecting my obligation to pay the note. I also agree that I will remain obligated to pay this note even if any other person who is obligated to pay this note has such obligation discharged in bankruptcy.”
When the note came due on June 1, 1987, Sayers renewed the note by signing as AAA vice president and as an individual. Because Sayers had made a $20,000 payment, the note was renewed for $130,000. Sayers and AAA again renewed the note in August 1987. However, shortly afterwards, Sayers left AAA and declared bankruptcy under Chapter 7 of the Bankruptcy Code.
When the note again came due in November 1987, the president of the Bank of Tallas-see, Arnold Dopson, informed Golden that he was still liable for the $130,000 note. Golden renewed the note on November 27,1987, and made payments on the note until September 1991, when the note went into default. The Bank then filed this complaint to recover the debt from Golden, and Golden counterclaimed for damages for fraud, alleging that Dopson’s representation that Golden was liable for the note was false and that this alleged misrepresentation had led him to renew the note on November 27, 1987.
In opposition to the Bank’s first motion for summary judgment, Golden produced an affidavit from Sayers, dated March 1, 1993, that stated:
*1368 “Mr. Dopson was, at all times after April 1, 1987, fully aware of my contractual relationship with Mr. Golden and my assumption of Mr. Golden’s personal liability....
“... I was informed that as Mr. Golden would no longer be personally guaranteeing the note, that it would be necessary for me to personally guarantee the same.... ”
[[Image here]]
“I would never have signed the personal guaranty on the $130,000 notes had it not been based on the representation that my doing so released Ronnie Golden under the terms of the sales agreement....”
However, the Bank then produced an affidavit from Sayers dated March 11, 1993, which directly contradicted his previous statement:
“[A]t no time in the course of my dealings with The Bank of Tallassee has any officer, agent or employee of The Bank of Tallas-see ever told me that Ronnie D. Golden would be released ... from liability on any debt from AAA Electric Company.... Furthermore, there was never any agreement among me, The Bank of Tallassee, and Ronnie D. Golden that the renewal notes [would] release Ronnie D. Golden from any obligation he might have had to the bank.
“... To the extent that [the March 1, 1993,] affidavit says that an officer, agent or employee of The Bank of Tallassee represented to me that Ronnie D. Golden was being released from any obligation which he owed The Bank of Tallassee ... the earlier affidavit is incorrect.”
After the trial court initially denied the summary judgment motion, the Bank then submitted excerpts of Sayers’s deposition testimony, wherein Sayers stated the following:
“Q. ... [W]hen you signed the note on June 1st ... did Arnold Dopson tell you that your signing would act to release Ronnie Golden?
“[Sayers]: ... [W]hen I signed this note, Arnold did not say, ‘Now, Earl, you signed this note, now Ronnie Golden is no longer responsible.’... The answer to your question is no, those words exact were not said, you know, that Ronnie Golden was no longer responsible....
[[Image here]]
“Q. So have you ever been told now at any time by any person affiliated with the Bank of Tallassee that Ronnie Golden had been released from his debt?
“[Sayers]: Not in those terms, no.
“Q. In any terms?
“[Sayers]: Well, no. No. Nobody ever told me that.
[[Image here]]
“Q. ... [A]t no time did you and Ronnie ever meet with [anyone] from the Bank of Tallassee where you discussed either the sale of AAA or this line of credit?
“[Sayers]: No.”
Further, Golden himself testified to the following:
“Q. At the time of the sale to Sayers, had anyone with the Bank of Tallassee told you or promised you that you would be released from the debt that you and AAA owed the bank at any time before that debt was paid in full?
“[Golden]: Not that I can recall, no, sir.
[[Image here]]
“Q. ... [N]o one at the bank had ever told you anything or said anything to give you any reason to think you were not liable on this line of credit; is that correct? “[Golden]: The best I can remember, that’s correct. I don’t remember.
[[Image here]]
“Q. No one at the bank ever told you that if Mr. Sayers fails to pay this note, you’re not going to be liable for it anyway? “[Golden]: No, sir. Not that I remember.”
Golden initially maintains that the Bank of Tallassee released him from the debt and by an accord and satisfaction.
An obligation may be extinguished by a “release” given to the debtor by the creditor upon a new consideration or in writing with or without new consideration. Ala.Code 1975, § 8-1-23. Further, an obligation may be extinguished by an accord and satisfaction. An “accord” is defined as “an agreement to accept in extinction of an obligation *1369 something different from or less than that to which the person agreeing to accept is claiming or entitled.” Ala.Code 1975, § 8-1-20. “Satisfaction” is defined as the “acceptance of the consideration of an accord which extinguishes the obligation.” Ala.Code 1975, § 8-1-22. In addition, a meeting of the minds of the parties is necessary to prove that an accord has been reached and a satisfaction has been made. Ray v. Alabama Central Credit Union, 472 So.2d 1012 (Ala.1985), citing Craft v. Standard Acc. Ins. Co., 220 Ala. 6, 123 So. 271 (1929).
Golden did not present substantial evidence that the Bank released him from the promissory note that he originally signed in March 1987 and renewed in November 1987. The evidence indicates that Golden willingly signed the $150,000 note, which clearly provided that Golden would remain liable on the note even if another person purported to assume the note. Further, Golden did not produce substantial evidence that the Bank agreed to accept “something different from or’ less than” what Golden was liable for under the note; such an agreement is required to prove an accord and satisfaction. See § 8-1-20 and § 8-1-22, supra. No proof was offered of a meeting of the minds between the Bank and Golden. Ray, supra.
Golden next contends that Sayers’s signing of the note and assumption of the obligation to pay the note served as a novation that released Golden from liability on the note. A novation is the substitution of one contract for another; a novation releases the party bound by the original contract. Smith v. Mid-South Fiberglass, Inc., 531 So.2d 649 (Ala.1988). A novation extinguishes the preexisting obligation. Smith, supra; Braswell Wood Co. v. Fussell, 474 So.2d 67 (Ala.1985). Furthermore, the party alleging a novation has the burden of proving that the parties intended a novation. Haygood v. Woods, 507 So.2d 525 (Ala.Civ.App.1987), citing Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236 (1924).
The evidence indicates that the Bank told neither Golden nor Sayers that Golden would be released from his obligation. As stated above, Golden presented no substantial evidence that the Bank agreed to extinguish his obligation on the promissory note. He presented no substantial evidence that the Bank intended to release him from the debt by a novation. Haygood, supra.
Golden further argues that the Bank should be equitably estopped from denying that it had released Golden from his obligation on the promissory note. The doctrine of equitable estoppel operates to prevent an unjust result; it precludes a party from taking a position in one instance inconsistent with that party’s position in another instance if to do so would prejudice another party. Williams v. FNBC Acceptance Corp., 419 So.2d 1363 (Ala.1982); United States Fidelity & Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala.1978).
Golden did not present substantial evidence that the Bank led him to believe that he would be released from the note. The evidence clearly indicates that the Bank did not release Golden from his obligation. It is also clear that the “Obligations Independent” clause in the note should have served as reasonable notice to Golden that he would not be released from the debt. As stated above, the “Obligations Independent” clause specifically declared that Golden would remain liable on the note, “even if any other person has also agreed to pay [the note].” Golden’s argument on this issue is without merit.
The trial court correctly determined that Golden remained liable on the promissory note to the Bank. Therefore, the summary judgment was also proper on Golden’s counterclaim alleging fraud, which was based upon the Bank’s representation that Golden was still liable on the note. The Bank’s representation concerning Golden’s obligation was truthful. The Bank made no misrepresentation of a material fact to Golden, as is required to prove fraud pursuant to Ala.Code 1975, § 6-5-101.
For the foregoing reasons, we agree with the trial court that there exists no genuine issue of material fact regarding the Bank of Tallassee’s claim on the promissory note and *1370 Golden’s fraud counterclaim. Therefore, its judgment is affirmed.
AFFIRMED.
MADDOX, SHORES', STEAGALL and KENNEDY, JJ., concur.