Shari LEONARD, Plaintiff and Appellee,

v.

Lyle LEONARD, Defendant
and Appellant.

No. # 18775.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1995.

Decided March 29, 1995.

John E. Burke, Sioux Falls, for plaintiff and appellee.

Karen L. Crew of Crew and Crew, Sioux Falls, for defendant and appellant.

PER CURIAM.

Lyle Leonard (Lyle) appeals a trial court order awarding his former wife, Shari Leonard (Shari), a one-half interest in the parties' marital home. We reverse.

### FACTS

The parties were divorced with the entry of a divorce decree on July 25, 1988. The divorce decree incorporated a stipulation and agreement between the parties dividing the marital assets. That agreement contained the following pertinent provisions concerning the marital home:

8. [Shari] and [Lyle] are presently owners of a house and lot located at 2105 East Madison, Sioux Falls, South Dakota. [Shari] and [Lyle] agree that [Shari] shall be entitled to the exclusive possession of the house to live in until the children have graduated from high school or until [Shari] remarries, whichever comes first. [Shari] agrees to make all payments and repairs which come due during this period and to hold [Lyle] harmless therefrom.

9. Ownership of [the] home reverts to [Lyle] after graduation of youngest child from high school[.]

On November 23, 1993, Shari filed a motion for a show cause order seeking to rescind the provision of the divorce stipulation requiring reversion of ownership of the marital home to Lyle. In addition, Shari sought an order directing that the parties should share equally in the proceeds from any sale of the home. Along with her motion, Shari filed an affidavit averring that the only reason she agreed to sign over her interest in the home was to obtain Lyle's agreement to end an ongoing pattern of harassment and intimidation he had directed at her since her commencement of the divorce proceedings. Shari further averred that, contrary to his agreement, Lyle had continued harassing her throughout the time leading up to her filing of the show cause motion.

In response to the show cause motion, Lyle raised the rule prohibiting modification of property settlements and laches as defenses. Shari countered with another affidavit in which she averred that, in July 1990, she had entered into an oral agreement with Lyle that she would receive one-half of the proceeds from any sale of the marital home if she continued living in the house and paying for the repairs. As proof of that agreement, Shari provided a copy of a check for $250 that she had written to pay Lyle for her share of the costs of reshingling the residence. In his counter-affidavit, Lyle averred he had never agreed to forego his claim to the proceeds from any sale of the home and

that no such agreement was ever discussed between the parties.

A show cause hearing was conducted and the trial court subsequently entered its findings of fact, conclusions of law and order. The trial court found: that the parties' stipulation for reversion of ownership of the marital home to Lyle was entered into on the basis of Lyle's agreement to curtail his harassment of Shari; that, contrary to that agreement, Lyle had continued harassing Shari after entry of the divorce decree; that the parties agreed in July 1990, that if Shari continued living in the marital home and taking care of the children and making repairs on the home, Lyle would agree to an equal division of the profits from the sale of the home; that this oral agreement constituted a novation of the parties' earlier stipulation and agreement for divorce; and, that the novation was evidenced by Shari's payment of one-half the costs of reshingling the home. Based on these findings, the trial court ordered that Shari should be awarded an undivided one-half interest in the marital home and in the net proceeds from any sale of the home. Lyle appeals.

## ISSUE

DID THE TRIAL COURT ERR IN DETERMINING THAT THE DISTRIBUTION OF MARITAL PROPERTY IN THE FINAL DECREE OF DIVORCE WAS MODIFIED BY A NOVATION SUBSEQUENTLY ENTERED INTO BETWEEN THE PARTIES? [1]

██ A "novation" is, "the substitution by contract of a new obligation *for an existing one* and is subject to the rules concerning contracts in general." SDCL 20–7–5 (emphasis added). In this instance, it cannot be ignored that the "existing obligations" of the parties with regard to the marital home, although set forth in a stipulation and agreement (i.e., a contract), were ultimately incorporated in a final judgment and decree by a trial court. Thus, the "existing obligations" were not simply private, contractual obligations subject to the usual principles of

1. Although Lyle raises three separate issues on appeal, those issues can be consolidated and addressed under this general question.

novation, but obligations established by a trial court's final judgment and decree in a civil action subject to the rules concerning finality of judgments. *See, Johansen v. Johansen,* 365 N.W.2d 859 (S.D.1985) (settlement agreements that become decreed property dispositions are not based on contracts but are obligations ordered by the court).

■ Moreover, the "existing obligations" at issue in this case are obligations concerning the parties' rights in marital property, i.e., the marital home. This court has a well established rule on the finality of judgments regarding a division of marital property: "a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication which is *not* subject to later modification." *Jeffries v. Jeffries,* 434 N.W.2d 585, 588 (S.D.1989) (emphasis added).

■ Shari relies on *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985) for the proposition that, after a divorce decree is entered, the property rights set out in the decree may be modified by the bilateral agreement of the parties. While this statement of the rule is accurate, it ignores the procedural distinctions between what occurred in this case and the holding in *Malcolm.*

In *Malcolm,* the parties were divorced in 1979 and entered into a stipulation and property settlement agreement incorporated in the divorce decree. The agreement required the husband to pay child support to the wife in the amount of $112 per month. It also provided that the parties would remain joint owners of the marital residence until sold and that they would equally divide the net proceeds from any sale of the property. In January of 1982, the parties entered into an agreement in which the wife agreed to convey her interest in the marital residence to the mortgagee in exchange for the husband's agreement to pay her $200 per month until her remarriage or their youngest daughter's attainment of the age of eighteen. The husband made the $200 payments for a little over a year and stopped. The wife commenced a show cause proceeding for a contempt order requiring the husband to continue making the $200 monthly payments. The trial court concluded that the parties' agree-ment modifying ownership of the marital home was, in reality, an attempt to increase the amount of child support for their child to $200 per month. Accordingly, the trial court ordered the husband to pay child support of $200 per month rather than ordering him to pay the $200 in addition to the $112 per month in child support he had already been paying. On these facts, this court concluded:

> The parties' rights to their respective interests in their property were irrevocably fixed by the terms of the divorce decree and could not later be modified by court order. [Wife], of course, was entitled to convey her interest in the property. We conclude that the consideration for her agreement to convey her interest to the bank for the satisfaction of the mortgage was [husband's] promise to substitute a $200.00 monthly payment by way of housing allowance for [wife's] property interest in the residence.

*Malcolm,* 365 N.W.2d at 865 (citations omitted).

*Malcolm's* true relevance to the instant case, however, is the following conclusion:

> We conclude, therefore, that the trial court erred in holding that the January 12, 1982, agreement was intended by the parties to fix the amount of child support. Accordingly, we reverse the order inasmuch as it attempted to modify the child support portion of the divorce decree in accordance with the trial court's interpretation of the January 1982 agreement.

> This does not mean, however, that upon remand [wife] should be entitled to enforce the January 12, 1982, agreement in the divorce action by means of a contempt citation. As pointed out above, the property rights of the parties were fixed by the terms of the 1979 divorce decree. Thereafter, any modification of those rights could only occur by way of bilateral agreement of the parties as manifested by a valid contractual agreement. *Inasmuch as we have interpreted the January 12, 1982, agreement as an enforceable private contract between the parties, [wife] will be required to commence a civil action for*

*whatever amounts may be due her under that contract.*

*Malcolm,* 365 N.W.2d at 866 (emphasis added).

■ Applying these principles in the instant case means that the property rights of Lyle and Shari in their marital home were "irrevocably" fixed by the terms of their 1988 divorce decree. Although they could subsequently modify those rights by way of a valid contractual agreement, such an agreement is only enforceable as a private contract between the parties. Therefore, Shari can commence an independent civil action for whatever amounts might be due her under that contract.

The scenario suggested by the conclusion in *Malcolm* is *not* what occurred in this case. Rather than commencing an independent civil action for breach of contract, Shari proceeded in the original divorce action by commencing a show cause proceeding seeking modification of the terms and provisions of the original divorce decree pertaining to the marital home. The trial court assented to that modification. Under settled law, however, the trial court had no jurisdiction or authority to order that modification.[2]

■ Shari also raises arguments in her brief claiming fraud and harassment induced her into entering into the original stipulation and agreement for divorce. The only relevance fraud and harassment might have, however, is if Shari had moved for relief from the judgment and decree of divorce pursuant to SDCL 15-6-60(b). *See, e.g., Anderson v. Somers,* 455 N.W.2d 219 (S.D.1990).[3] This she did not do and, as a result, her conten-

tions concerning fraud are irrelevant to the issues in this appeal.

Based upon the foregoing analysis, we hold that the trial court erred in determining that the distribution of marital property in the final decree of divorce was modified by a novation subsequently entered into between the parties.

Reversed.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., participating.

---

2. This does not suggest that the parties to a divorce action cannot mutually appear before a trial court and stipulate and agree to a court-approved modification of the divorce decree *pursuant to their stipulation. See, e.g., Stach v. Stach,* 369 N.W.2d 132 (S.D.1985). No such stipulation for modification by the trial court occurred in this case, however. Rather, Lyle denied agreeing to any modification of the divorce decree and Shari sought to impose the modification on him with her show cause motion.

3. In *Anderson, supra,* the former wife filed a motion for an order to show cause seeking relief from the unsatisfactory provisions of a property settlement agreement that had been incorporated in the parties' divorce decree. The former wife's motion was based on the provisions of SDCL 15-6-60(b) allowing relief from final judgments on the basis of fraud, misrepresentation, misconduct and any other reason justifying relief from the operation of a judgment. The purported fraud consisted of the former husband's assurances at the time of the divorce that he would remain with wife even after the divorce. The trial court declined to set aside the property division and the former wife appealed. This court affirmed, holding that the former wife's motion for relief from the judgment was untimely under the standards of SDCL 15-6-60(b).