PER CURIAM.
Austin L. Humber, Jr. (“the former husband”), and Melissa Kay Humber Bjorn-son (“the former wife”) were divorced on March 21, 2003, by a judgment of the Walker Circuit Court (hereinafter “the trial court”). The parties’ divorce judgment incorporated an agreement, a copy of which is contained in the record on appeal, that provided, in pertinent part, as follows:
“That the [former wife] shall be the sole owner, free and clear from any claim of the [former husband], of the 2001 Mitsubishi Gallant automobile and the 1997 Chevrolet S-10 Blazer. The [former wife] shall pay all indebtedness thereon and shall indemnify and hold harmless the [former husband] from any loss thereon. The [former husband] shall sign any and all documents necessary or advisable to effectuate this transfer.
[[Image here]]
“Each party shall execute and deliver all documents of any type that may be necessary or expedient for the consum *997 mation of the provisions of this agreement.”
On November 16, 2006, the former husband filed a petition for a rule nisi alleging that the former wife had failed to comply with the provision of the March 21, 2003, divorce judgment requiring her to pay all indebtedness on the Chevrolet S-10 Blazer sport-utility vehicle jointly owned by the parties during the marriage; therefore, he argued, the former wife was in contempt of the trial court’s divorce judgment.
On February 6, 2007, the trial court conducted a final hearing at which it considered ore tenus evidence pertaining to the former husband’s petition for a rule nisi. On June 28, 2007, the trial court entered an order denying the former husband’s petition for a rule nisi and finding that the former husband was the true owner of the S-10 Blazer.
On July 27, 2007, the former husband filed a motion to reconsider or, in the alternative, to alter, amend, or vacate the trial court’s June 28, 2007, order denying the former husband’s petition for a rule nisi. On August 22, 2007, the former husband filed a notice of appeal.[1] The post-judgment motion was denied by operation of law on October 25, 2007.
At the outset, we note that when a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This “presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.” Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). However, no presumption of correctness is afforded the trial court’s application of the law to the facts. Brown v. Brown, 719 So.2d 228, 230 (Ala.Civ.App.1998).
The evidence presented to the trial court revealed the following pertinent facts. While married, the parties purchased a 1997 Chevrolet S-10 Blazer. The vehicle was paid for by a loan from the former husband’s credit union. The testimony indicates that payment on the loan was automatically withdrawn from the former husband’s paycheck. The former husband testified that the former wife agreed dim-ing their uncontested divorce proceedings to pay the outstanding balance owed on the vehicle. Pursuant to the divorce judgment, the former wife was awarded the vehicle and was ordered to pay the remaining indebtedness thereon. The former husband testified as follows regarding his understanding of the former wife’s repayment of the loan on the vehicle:
“Q. Okay. Now, on the matter of the rule nisi petition that was filed on your behalf, to which I signed, alleging that in the settlement agreement your ex-wife, which at that time had not become your ex-wife, had agreed to take over the payments of the Chevy Blazer.
“A. Yes, ma’am.
“Q. And she knew from discussions between your lawyer and her lawyer that she was supposed to refinance this vehicle in her name?
“A. Well, we used the same lawyer. ... [I]t was in the order that she was supposed to, and when she got it refinanced ... she was supposed to sign the *998 papers to clear me of anything on the Chevrolet Blazer, but it never was — you know, I took care of all — I mean I did. I paid every bit of it. She never even attempted to make a payment on it.
“Q. What was the arrangement between you and [the former wife] as to how the payment was supposed to get to you?
“A. I mean, there was no arrangement. From what I understood, she was just supposed to, you know, make the payment or give me the money to make the payment. That would have been fíne. I could have went and made the payment, you know, put the money in my account because the payment was coming out of my check.”
The former husband testified that during the three months following the parties’ divorce, the vehicle remained parked at the former wife’s mother’s house. According to the former husband, the former wife did not make any payments on the vehicle after the trial court entered its divorce judgment. The former husband explained that he continued to make payments on the vehicle after the parties divorced.
The former husband testified that he repossessed the vehicle after the former wife failed to make payments on the loan. The former husband consulted his attorney (the same attorney that had represented the parties in the uncontested divorce proceedings), and, according to the former husband, the attorney instructed him to “repossess” the vehicle. The former husband testified that, in June 2003, the former wife drove him to her mother’s house so that he could retrieve the vehicle. The former husband testified that, at the time he repossessed the vehicle, he and the former wife had not reached an agreement that he would take the vehicle and the former wife would have no right to possession of the vehicle.
The former husband acknowledged that he had the full benefit of the use of the vehicle after he took possession of it. The former husband testified that he drove the vehicle as needed when his primary vehicle was in the shop for repair. The former husband stated, however, that he had not driven the vehicle during the two years preceding the final hearing.
The former husband estimated that he had paid approximately $500 a month on the loan for the vehicle. In addition to the loan payment, the former husband testified that he had also paid $123.18 a month for insurance on the vehicle. According to the former husband, he had been required to maintain full insurance coverage on the vehicle while his credit union held the title to the vehicle. The former husband testified that he had spent close to $25,000 over a four-year period on loan payments and insurance premiums for the vehicle. The former husband testified that no outstanding indebtedness remained on the vehicle at the time of the final hearing. The former husband stated that he had the title to the vehicle and that the vehicle was registered in his name alone. According to the former husband, the former wife never offered him any money toward the payments on the vehicle.
The former wife testified that she understood that, pursuant to the parties’ agreement, she was supposed to take possession of the vehicle and make the payments on it. However, according to the former wife, before the parties divorced, she and the former husband agreed that the former wife’s brother would take possession of the vehicle and pay $350 a month for the use of the vehicle. At the time the parties divorced, the former wife’s brother was using the vehicle. When asked about her brother’s use of the vehicle, the former wife testified as follows:
*999 “A. Well, before [the former husband] and I divorced, we had allowed my brother to take the Blazer, [the former husband] and myself. And I believe that my brother agreed to pay $350 a month for it and he did for a couple of months.
“Q. Whose brother?
“A. My brother. And at that point [the former husband] and I did get the divorce, and my brother was still driving the Blazer. And I guess maybe three months went by and he didn’t pay anything, and [the former husband] and I talked several times about it and, you know, I would talk to my brother and always get the runaround. So [the former husband] asked me to have the Blazer parked at my mother’s house, and I did, and he asked me to come by and get him so he could pick it up, so I went by and got him and dropped him off, and he took off in [the vehicle].
“Q. And he has had it ever since?
“A. Yes, sir.
“Q. Has he ever — he had it for quite some time. Forty months he made payments on it. He still has it, of course. But did he ever call you, do you recall him calling you and saying, hey, when [are] you going to come pick this thing up, I don’t want to pay for it, or anything like that?
“A. No sir. The only conversations we ever had about the Blazer was when I would ask him to help me financially with the kids, and he would throw up the fact that he was paying for the Blazer and that was his financial payments.”
The former wife testified that the former husband never contacted her to inquire as to when she was going to pick up the vehicle. Testimony at the final hearing indicated that the title to the vehicle had remained in the former husband’s name and was never changed to reflect the former wife’s ownership of the vehicle. The former wife testified that she never took possession of the vehicle and that the former husband had always had possession of the vehicle after the former husband had “repossessed” the vehicle following the parties’ divorce. The former wife testified that when the former husband filed his rule nisi petition was the first she knew of his objection to having to pay for the vehicle.
In its June 28, 2007, judgment, the trial court found, in part, as follows:
“From the totality of the circumstances, this court finds that the parties, after the Final Judgment of Divorce was rendered in March 2003, entered into a novation (a new agreement) in regard to this vehicle, whereby [the former husband] re-took possession of the Blazer vehicle awarded to the [former] wife in the divorce, kept the vehicle, used it when and how it suited his needs and paid for the vehicle.
“... [The former husband] is the true owner, by novation, of the 1997 Chevrolet S-10 Blazer originally awarded to the [former] wife in the divorce decree. That pursuant to the novation he has made the payments thereon as tacitly agreed upon by and between the parties.
“That [the former wife] is not in civil or criminal contempt of this court as alleged by [the former husband] in his November 16, 2006, Petition for Rule Nisi.”
On appeal, the former husband contends that the evidence presented to the trial court did not support a finding by the trial court that “he and [the former wife] had entered into a novation.” Specifically, the former husband argues that when he took possession of the vehicle he was merely safeguarding a piece of property that he was financially obligated to pay for until such time as the former wife decided to *1000 follow through with her obligations under the divorce judgment.
“[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.” Smith v. Smith, 568 So.2d 838, 839 (Ala.Civ.App.1990).
“ ‘A novation is the substitution of one contract for another, which extinguishes the pre-existing obligation and releases those bound thereunder.... In addition, the party alleging a novation has the burden of proving that such was the intention of the parties.’ Pilalas v. Baldwin County Sav. & Loan Ass’n, 549 So.2d 92, 94-95 (Ala.1989) (citations omitted). Whether parties to a contract intended a novation may be deduced from the facts and circumstances. Bledsoe v. Cargill, Inc., 376 So.2d 735, 736 (Ala.Civ.App.1979). ‘This court has held that to establish a novation there must be: (1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto.’ Warrior Drilling & Engineering Co. v. King, 446 So.2d 31, 33 (Ala.1984).”
Marvin’s, Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992). “In order for there to be a novation, the pre-existing obligation must be extinguished.” Smith v. Mid South Fiberglass, Inc., 531 So.2d 649, 652 (Ala.1988) (citing Braswell Wood Co. v. Fussell, 474 So.2d 67 (Ala.1985)).
In order to address the former husband’s contention on appeal, we must determine whether the theory of novation is applicable to situations in which parties purportedly agree to change the property-division provision of a trial court’s divorce judgment. The former husband has cited no caselaw, and our research has revealed none, addressing the application of novation to a trial court’s judgment. Our supreme court, however, has held that a novation is the substitution of one contract for another. See Robertson, supra. Although this court has previously recognized that a settlement agreement incorporated into a divorce judgment is in the nature of a contract, Smith, supra, it has done so in the context of addressing ambiguity within an agreement incorporated into a divorce judgment. However, in this case the parties are seeking a determination regarding a judgment that neither party contends is ambiguous. In the instant case, the property-settlement agreement incorporated into the trial court’s March 21, 2003, divorce judgment was final and not modifiable. The record indicates, and neither party disputes, that the trial court’s divorce judgment was unambiguous. The former wife’s testimony revealed that she understood that she was responsible for paying the outstanding indebtedness on the vehicle. Likewise, the former husband testified that the former wife was required to pay for the vehicle under the terms of the divorce judgment. We have discovered no Alabama law that allows a trial court, under the theory of novation, to substitute a new judgment for one previously entered, and we conclude that the use of that theory to modify a judgment is contrary to established case-law prohibiting modification of a property division in a divorce judgment more than 30 days after the entry of the judgment. See McGiboney v. McGiboney, 679 So.2d 1066, 1068 (Ala.Civ.App.1995)(“Property settlement provisions of a final judgment of divorce become final and cannot be modified after thirty days from the date of the judgment.”); see also Russell v. Russell, 386 So.2d 758 (Ala.Civ.App.1980)(same). Accordingly, we conclude that the trial court acted outside its authority when it found that a novation had occurred, thereby effectively modifying its *1001 otherwise unambiguous March 21, 2003, divorce judgment.
Regardless of the trial court’s improper finding of a novation, our review of the record reveals that the trial court properly enforced the parties’ informal agreement concerning the vehicle. It is well settled that a trial court’s judgment “will be affirmed if it is proper on any legal basis, even if the trial court gives a wrong reason.” Gooch v. Gooch, 643 So.2d 1382, 1384 (Ala.Civ.App.1994); see also D.L. v. R.B.L., 741 So.2d 417 (Ala.Civ.App.1999); Blair v. Murray, 494 So.2d 655 (Ala.Civ.App.1986).
The record indicates that the parties entered into a new agreement after the trial court entered its divorce judgment incorporating the parties’ settlement agreement. Shortly after the parties divorced, the former husband voluntarily repossessed the vehicle and made payments on it. The former husband, whose name alone was on the title to the vehicle,[2] kept the vehicle and maintained it for his personal use. The former husband never objected to his having to take the vehicle and make payments on it until months after he had paid off the outstanding indebtedness on the vehicle. The former wife never asked the former husband to return the vehicle to her after he took possession of it. The former wife’s testimony revealed that the former husband claimed that payments made on the vehicle were in lieu of additional payments of support for the benefit of the parties’ children.
Our supreme court has recognized that parties to a divorce judgment cannot, by subsequent agreement, modify the terms of the trial court’s divorce judgment. Holland v. Holland, 406 So.2d 877, 879 (Ala.l981)(holding that “parties to a divorce decree may not change or modify the decree merely by an agreement between themselves”). This court addressed the application of our supreme court’s decision in Holland in Oliver v. Oliver, 431 So.2d 1271 (Ala.Civ.App.1983). In Oliver, supra, the parties were divorced by a 1975 divorce judgment that incorporated an agreement of the parties. Six years later, the former husband sought to terminate his periodic-alimony obligation due to the remarriage of the former wife. The former wife answered and claimed, among other things, that the former husband owed past-due alimony. Evidence presented to the trial court indicated that the former husband had paid the full amount of periodic alimony as ordered by the parties’ divorce judgment until 1978 and had paid a reduced amount until 1981, when he learned of the former wife’s remarriage. The trial court concluded that, based on the ore tenus evidence presented to the trial court, the parties had mutually agreed to a reduction in the former wife’s periodic alimony in 1978 and declined to award the former wife past-due alimony. The former wife appealed, arguing that the trial court had erred in finding that the provisions for periodic alimony contained in the divorce judgment were modified by the 1978 agreement of the parties. Oliver, 431 So.2d at 1273. This court affirmed the judgment of the trial court on appeal, stating:
“At first impression it may be thought that [the trial court’s judgment] is contrary to the decision of the Alabama Supreme Court in the case of Holland v. Holland, 406 So.2d 877 (Ala.1981) and the yet unpublished decision in the case *1002 of Ex parte Eugene Smith, Jr., 429 So.2d 1050 (Ala.1983). The court held in those cases that a final judgment may not be modified or amended by a subsequent agreement between the parties. Of course that holding is the law. Only the court may modify or amend its final judgment. However, we do not understand that holding to mean that the parties by agreement may not waive or release, in part or in entirety, their rights to the benefits granted by such judgment. Such waiver, satisfaction, credit or release of judgment by subsequent contract is common at law or in equity. Any right held by a party, whether by judgment or otherwise, may be the subject of contract to alter, exchange, waive, sell or satisfy. 15A C.J.S. Compromise and Settlement § 23; Winegardner v. Burns, 361 So.2d 1054 (Ala.1978); Watson v. McGee, 348 So.2d 461 (Ala.1977). Whether there was such a contract with consideration was an issue of fact in this case. The finding of the court that by agreement the [former] wife waived or compromised her right to the full amount of alimony and accepted the lesser amount of $700.00 per month is supported by evidence presented. Though referring to the divorce decree as being modified by agreement, the trial court also found that the [former] wife waived the full amount by agreement. The finding of waiver by agreement viewed with a presumption of correctness is affirmed. McGaha v. Steadman, 410 So.2d 420 (Ala.Civ.App.1981).”
Oliver, 431 So.2d at 1274.
In this case, the former wife effectively offered to give the vehicle to the former husband, and the former husband tacitly accepted the offer by taking possession of the vehicle, paying the indebtedness on the vehicle, and insuring it. The judgment of the trial court merely recites what the parties informally agreed to, as demonstrated by the evidence presented to the trial court. In light of the foregoing, we cannot say that the trial court erred in enforcing the parties’ informal agreement, albeit under the wrong theory. Gooch v. Gooch, supra; D.L. v. R.B.L., supra.
We note that the former husband does not contend on appeal that the trial court erred by finding that the former wife was not in civil or criminal contempt as alleged in his petition for a rule nisi. It is well settled that it is not the function of this court to create arguments for an appellant or to search the record on appeal to find evidence that would support the appellant’s argument. McLemore v. Fleming, 604 So.2d 353 (Ala.1992); Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). However, to the extent that the former husband’s argument implicitly suggests error on the part of the trial court in failing to find the former wife in contempt, we will briefly address the propriety of the trial court’s judgment declining to find the former wife in contempt.
“ ‘ “[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, [the appellate] court will affirm.” Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994).’ ”
Woods v. Woods, 851 So.2d 541, 545 (Ala.Civ.App.2002)(quoting Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala.1999)). “To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) or (D), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order.” T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
*1003 The evidence presented to the trial court indicated that after the divorce neither the former husband nor the former wife complied with the trial court’s judgment. The trial court’s judgment required the former husband to “sign any and all documents necessary or advisable to effectuate” the transfer of the vehicle to the former wife. The record indicates that the former husband, in whose name the loan for the vehicle was listed, did not attempt to execute or deliver the documents necessary to substitute the former wife as the borrower on the loan. The former wife did not pay the remaining indebtedness on the vehicle as she was ordered to do by the trial court.
During the three years after the trial court entered its divorce judgment and before the former husband filed his petition for a rule nisi, the former husband never confronted the former wife regarding her failure to take possession of the vehicle and to pay the outstanding indebtedness on the vehicle as required in the divorce judgment. The former husband admitted that he never asked the former wife to reimburse him for the payments that he had made on the vehicle. The evidence presented to the trial court indicates that the former husband solicited the former wife’s help to take possession of the vehicle. Once the former husband took possession of the vehicle, he drove it and paid the outstanding indebtedness on it.
Based on the evidence presented at the final hearing, the trial court could have concluded that the former husband’s failure to comply with the divorce judgment prevented the former wife from complying with the judgment. The former husband’s failure to execute documents to transfer the loan for the vehicle into the former wife’s name, his decision to take possession of the vehicle, and his decision to continue making payments on the vehicle for over three years after the trial court had entered its divorce judgment contributed to the former wife’s failure to comply with the trial court’s divorce judgment. The evidence supports a conclusion that the former wife did not willfully fail or refuse to comply with the trial court’s judgment. See T.L.D. v. C.G., supra. Given the evidence presented to the trial court, we cannot say that the trial court exceeded its discretion by declining to hold the former wife in contempt of its March 21, 2008, divorce judgment. The judgment of the trial court is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in part and concurs in the result in part, with writing, which THOMAS, J., joins.

. “A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rule[] ... 59, [Ala. R. Civ. P.], shall be held in abeyance until all post-judgment motions ... are ruled upon” or disposed of by operation of law. Rule 4(a)(5), Ala. R.App. P.

. "A certificate of title issued by the [DJepartment [of Revenue] is prima facie evidence of the facts appearing on it.” § 32-8-39(d), Ala. Code 1975. "In Alabama, a certificate of title to a motor vehicle establishes prima facie title in favor of the individual ... whose name appears on the certificate.” Auto-Owners Ins. Co. v. DeLude, 827 So.2d 806, 811 (Ala.Civ.App.2001).