COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Athey
Argued by videoconference

PUBLISHED

JORDAN ALEXANDER PRICE

v.      Record No. 0852-20-3

NATASHA YVONNE PEEK, F/K/A
  NATASHA Y. PRICE

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 22, 2020

FROM THE CIRCUIT COURT OF SCOTT COUNTY
Jeffrey S. Hamilton, Judge

Timothy W. McAfee (McAfee Law Firm, PLLC, on brief), for
appellant.

Joseph W. McMurray (R. Wayne Culbertson, PC, on brief), for
appellee.

Jordan Alexander Price (the husband) appeals the circuit court's final order concluding

that Natasha Yvonne Peek (the wife) was not liable for any part of a particular bank loan. After

reviewing the record, we conclude that the post-marital transfer of marital debt from one

financial institution to another did not change its classification. Therefore, under the parties'

property settlement agreement, the husband remained solely responsible for that debt following

the transfer. Further, the record does not definitively establish that the wife intended to accept

half of the responsibility for the new loan, and therefore the wife did not relieve the husband

from his liability through novation. For these reasons, we affirm the decision of the circuit court.

# I.  BACKGROUND[1]

The parties married in 2003 and divorced in 2015.  They signed a separation and property settlement agreement that allocated "all marital debts" to the husband.  In that document, the husband agreed to hold the wife harmless for "any liability" on such debts.  The agreement also provided that any modification must be formal and in writing.  The final divorce decree affirmed, ratified, and incorporated the parties' property settlement agreement.

Marital debt at the time of the divorce included a loan from "Farm Credit of the Virginias."  Both parties signed the loan, and they used the wife's separately owned real estate as collateral.

After the divorce was final, the husband informed the wife that he had become delinquent on the Farm Credit loan.  Despite being divorced, the parties refinanced the loan through First Bank & Trust.  In doing so, they obtained a new loan through First Bank and used it to pay the entire Farm Credit loan.  The parties again cosigned the loan and used the wife's real estate as collateral.  The wife testified that she signed the new loan documents only to save her property that was used as collateral from foreclosure.  The wife agreed to pay part of the new loan because the husband was unable to pay it by himself, but she believed it remained his sole obligation.  The husband testified that he believed that the wife agreed to assume full responsibility for half of the new loan.

The wife paid $3,000 on the first payment to First Bank, but she made no other payments on that loan.  The husband made several payments on the loan but eventually became delinquent due to lack of adequate funds.

---

[1] In accordance with familiar principles of appellate review, we view the facts in the light most favorable to the wife, as the prevailing party below.  See Gray v. Gray, 228 Va. 696, 699 (1985); Starr v. Starr, 70 Va. App. 486, 488 (2019).

The husband filed a complaint seeking a declaratory judgment against the wife. He argued that the original marital loan with Farm Credit, for which he was solely responsible pursuant to the property settlement agreement, was fully extinguished and the wife was obligated to pay a portion of the new, post-marital loan contract with First Bank. The wife countered that the loan with First Bank was merely a continuation of the original marital debt owed to Farm Credit and that she had not received any benefit from the refinance.

The circuit court held that the husband was obligated to pay the entire loan due to First Bank. In doing so, it found that the First Bank loan was "merely a substitution for the debt owed Farm Credit" and held that the status of the debt was not altered by the transfer.

The husband appealed to the Supreme Court of Virginia. Ruling that it did not have jurisdiction over the case, the Supreme Court transferred the appeal to this Court.

## II. ANALYSIS

The appellant argues that the circuit court erred by holding that he was obligated to pay the entire loan owed to First Bank. He contends that a novation satisfied his obligation contained in the final divorce decree incorporated from the parties' property settlement agreement.

A property settlement agreement is "[a] contract that divides up the assets of divorcing spouses and is incorporated into a divorce decree." Property Settlement, Black's Law Dictionary (11th ed. 2019); see also Dale M. Cecka, Lawrence D. Diehl & James R. Cottrell, Family Law: Theory, Practice, and Forms § 3:5(b) (2020 ed.) (discussing property settlement agreements generally). Pursuant to Code § 20-109.1, a circuit court has the discretion to affirm, ratify, and incorporate a valid, signed "agreement between the parties, or provisions thereof," into its divorce decree or another related decree. Once the court does so, the agreement or provision becomes "for all purposes . . . a term of the decree" and is "enforceable in the same manner as any provision of such decree." Code § 20-109.1; see Kahn v. McNicholas, 67 Va. App. 215,

227-28 (2017) (explaining that a circuit court can enforce a provision in a property settlement agreement affirmed, ratified, and incorporated into a final divorce decree as a money judgment or through its contempt powers).

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting Southerland v. Estate of Southerland, 249 Va. 584, 588 (1995)). Further, this Court reviews the circuit court's "interpretation of the parties' agreement *de novo*." Id.; see Plunkett v. Plunkett, 271 Va. 162, 166 (2006).

"In reviewing a property settlement agreement, the court must determine 'the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used.'" Jones, 68 Va. App. at 105 (alteration in original) (quoting Layne v. Henderson, 232 Va. 332, 337-38 (1986)). In that vein, a court is limited to the words actually contained in the agreement and "may not 'read into [it] language'" that changes its meaning. Id. at 106 (quoting Wilson v. Holyfield, 227 Va. 184, 187 (1984)).

In this case, the parties' property settlement agreement allocated all marital debt to the husband. See generally Code § 20-107.3 (listing marital debt as a classification of debt for equitable distribution purposes). Therefore, under the parties' agreement, the proper allocation of the First Bank loan turns on whether it constitutes marital debt.

The parties' agreement does not define marital debt. However, the agreement references Code § 20-107.3, and therefore we interpret the term "marital debt" consistent with that statute. See Plunkett, 271 Va. at 167 (requiring that appellate courts construe contractual terms in a manner consistent with the document viewed as a whole). The statute defines marital debt, in pertinent part, as "all debt incurred in the joint names of the parties before the date of the last

separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent."[2]  Code § 20-107.3(A)(5).

The circuit court found that the First Bank loan was marital debt.  A circuit court's classification of property or debt is a finding of fact that "will not be reversed on appeal unless it is plainly wrong or without evidence to support it."  See Ranney v. Ranney, 45 Va. App. 17, 31-32 (2005).

The original loan from Farm Credit was marital debt.  The record establishes that the parties simply refinanced the Farm Credit loan through First Bank.  They used the new loan from First Bank to pay the entirety of the Farm Credit loan and did not withdraw any additional funds.  The debt in the form of the loan from First Bank was readily traceable to the marital loan from Farm Credit.  Cf. generally Hamad v. Hamad, 61 Va. App. 593, 602-03 (2013) (analyzing whether evidence proved that separate property commingled with marital property was traceable).  Since the new loan was a transfer of the original debt to a different financial institution, the marital debt in the form of the new loan retained its marital classification.  Regardless of the lender, the debt was incurred jointly by the parties before their separation and thus constituted marital debt under Code § 20-107.3(A)(5).  The fact that the parties transferred the marital debt to a different bank did not change its nature.  Consequently, the circuit court correctly concluded that the debt remained marital after the refinance.

The terms of the property settlement agreement assigned all marital debt to the husband, and therefore, the husband remained responsible for the marital debt after it was transferred to First Bank.  Cf. McElwain v. McElwain, 123 P.3d 558, 561-62 (Wyo. 2005) (holding that one

---

[2] Code § 20-107.3(A)(5) defines marital debt in the aggregate, as signified by the phrase "all debt."  Consequently, "debt," as used in the statute, is "[t]he aggregate of all existing claims against a person, entity, or state."  Debt, Black's Law Dictionary (11th ed. 2019).  See generally Eley v. Commonwealth, 70 Va. App. 158, 165 (2019) (noting that a court interpreting undefined statutory terminology may consult dictionary definitions).

spouse remained liable for his share of the mortgage after the other spouse refinanced the loan). For these reasons, the circuit court correctly concluded that the First Bank loan was allocated to the husband.

The husband contends that he is no longer solely responsible for the debt because the new post-marital loan extinguished his separate obligation under the property settlement agreement and replaced it with a joint obligation. He argues that the transaction amounted to a novation agreement and that this is the proper legal lens through which to analyze the case.

A "novation" occurs when a new loan is substituted for an existing one and "extinguishe[s]" the previous loan entirely. Dillenberg v. Thott, 217 Va. 433, 435 (1976) (citing Arlington Towers Land Corp. v. McFarland, 203 Va. 387, 392 (1962)). The new agreement may involve the same parties or a "substitution . . . of one debtor . . . or one creditor for another." Id. However, "[i]n order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well[-]settled principle that novation is never presumed." Id. (quoting J. M. Turner & Co. v. Delaney, 211 Va. 168, 172 (1970)). "[W]hether that intention existed is to be determined from all the facts and circumstances incident to the new agreement." Id. (citing Mitchell v. Cox, 189 Va. 236, 243 (1949)).

The parties' intent is a question of fact. See Ott v. L & J Holdings, LLC, 275 Va. 182, 187 (2008). As such, a finding by the circuit court regarding intent "is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." See Ridenour v. Ridenour, 72 Va. App. 446, 450 (2020) (quoting Pommerenke v. Pommerenke, 7 Va. App. 241, 244 (1988)).

Here, the wife testified that she cosigned the new loan to prevent Farm Credit from foreclosing on her separate property, which was the collateral for the original Farm Credit loan.

After considering the evidence, the court implicitly found that the wife did not express the intent to accept half of the liability of the refinanced loan. See Dillenberg, 217 Va. at 435. See generally Henderson v. Commonwealth, 285 Va. 318, 326 (2013) (inferring a circuit court's finding based on its ruling). Instead, the court found that the refinanced loan through First Bank "was merely a substitution" for the original loan from Farm Credit. The wife's testimony supports a finding that she did not intend to effect a novation to relieve the husband of half of the liability of the loan. See Dillenberg, 217 Va. at 435 (holding that a "novation is never presumed" (quoting J.M. Turner & Co., 211 Va. at 172)). Consequently, the evidence supported the circuit court's conclusion that a novation did not occur to relieve the husband from bearing the sole responsibility for the debt.[3] See Forcht v. Forcht Bank, N.A., 533 S.W.3d 695, 701 (Ky. Ct. App. 2017) (distinguishing between a mere refinance, which does "not extinguish an obligation," and a "renewal note that is a novation which operates to extinguish an original debt" (quoting Nolin Prod. Credit Ass'n v. The Citizens Nat'l Bank of Bowling Green, 709 S.W.3d 466, 467 (Ky. Ct. App. 1986))); see also Seawell v. Hargarten, 28 So. 3d 152, 155 (Fla. Dist. Ct. App. 2010) (holding that "[a] misunderstanding cannot result in agreement" for contractual or novation purposes).

Accordingly, we hold that the circuit court did not err by determining that the husband is solely liable for the First Bank loan.

---

[3] We note that some jurisdictions have expressly held that novation principles cannot apply to an agreement that has been incorporated into a final court order. See Humber v. Bjornson, 8 So. 3d 995, 1000-01 (Ala. Civ. App. 2008); Leonard v. Leonard, 529 N.W.2d 208, 209-10 (S.D. 1995). Those cases recognize that novation principles may apply to typical contracts but distinguish agreements that have been incorporated into divorce decrees based on the need for finality of final judgments. See Humber, 8 So. 3d at 1000; Leonard, 529 N.W.2d at 209-10. Here, we do not consider the fundamental question of whether novation principles can ever apply to a property settlement or separation agreement that has been incorporated into a final decree. The issue was not raised by either party, and regardless, based on the record, a novation did not occur in this case.

## III. CONCLUSION

Based on the record, the loan at issue remained marital debt through the refinance and therefore, under the terms of the parties' property settlement agreement, remained allocated to the husband.  Further, his suggested legal theory of novation fails because the record supports a finding that the wife did not intend to accept half of the liability of the refinanced loan.  For these reasons, we affirm the decision of the circuit court.

<u>Affirmed.</u>